Vicki G. **NEWBERG,** Acting Director of Special Fund, Appellant,

v.

Chester **WRIGHT;** Manning Coal Corp.; Ronald W. May, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 91–SC–572–WC.

Supreme Court of Kentucky.

Feb. 13, 1992.

John E. Stephenson, Appellate Atty., Labor Cabinet—Special Fund, Louisville, for appellant.

Ralph Roland Case, Pikeville, for appellee Wright.

Thomas L. Ferreri, Lexington, for appellee Manning Coal Corp.

OPINION OF THE COURT

Wright filed a claim for disability benefits, alleging that he had contracted pneumoconiosis and/or chronic, occupational bronchitis. Subsequently, he settled with his last employer for its share of any liability. When the case came before the Administrative Law Judge (ALJ) he ruled that Wright had contracted category 1 coal workers' pneumoconiosis and had sustained a 75% permanent, partial disability. KRS 342.732(1)(b): Pursuant to KRS 342.316, the Special Fund was liable for 75% of the award. The award was affirmed by the Workers' Compensation Board and the Court of Appeals.

On appeal, the Special Fund argues: 1) that the ALJ improperly adjusted Dr. Anderson's calculation of Wright's FEV1 value as a percentage of the predicted normal value for a man of his age and height, and 2) that because Wright's largest spirometric test values were greater than 80%, he should not have been awarded benefits pursuant to KRS 342.732(1)(b).

According to KRS 342.732(1)(b), a claimant who has a category 1 radiograph and who has respiratory impairment resulting from exposure to coal dust, as evidenced by spirometric test values of 55% or more, but less than 80% of the predicted normal values found in the latest edition of the Ameri-

can Medical Association's *Guides to the Evaluation of Permanent Impairment* (*Guides*), is entitled to a 75% occupational disability benefit. Medical evidence in this case was given by three physicians. The ALJ's finding that claimant's X-rays exhibited category 1 disease is not disputed on appeal. The spirometric test data reported was as follows:

| Physician | FVC value | FVC (% of predicted) | FEV1 value | FEV1 (% of predicted) | Height | Age |
|---|---|---|---|---|---|---|
| Wright | 4.0 | (96%) | 2.6 | (78%) | 69″ | 61 |
| Nash | 3.7 | (75.4%) | 2.3 | (61.3%) | 71″ | 61 |
| Anderson | 4.8 | (100%) | 2.8 | (*86%) | — | 61 |
| | | | | *disputed | | |

At the hearing on this case, counsel for the claimant argued that, while he had no dispute with the FEV1 value reported by Dr. Anderson, the calculation of that value as a percent of the predicted normal value for a man of claimant's age and height was erroneous. Dr. Anderson, who testified for the Special Fund, failed to state the claimant's height in his report. However, the spirometric tracing sheet, submitted with the report as required by KRS 342.-316(2)(b)2.b., indicated that claimant's height was 70½″.

The ALJ noted that he was without authority to look behind the test values reported by the physicians; however, because KRS 342.732(1)(b) requires the use of the *Guides* to calculate the reported values as a percent of the predicted normal value, he did have the authority to check the calculated percentage to ascertain that the *Guides* were used and were used correctly. According to the tables found in the *Guides*, the predicted normal values are a function of age and height. Because Dr. Anderson had failed to state claimant's height in his report, the ALJ used the height reported by Dr. Wright, the Special Fund's other medical expert, in order to find the appropriate normal value and to check Dr. Anderson's calculation of the percent of predicted normal represented by his 2.8 test value. When Dr. Anderson's 2.8 test value was compared to the normal value for a 69″ tall, 61 year old man, found in the appropriate table in the latest edition of the *Guides*, the resulting percent of the predicted normal was 78%. The ALJ noted that because the 69″ height measured by Dr. Wright was the lowest in the record, this calculation produced the result least favorable to the claimant. If, for example, the 71″ height found by Dr. Nash had been applied to the table and the percentage of normal calculated, the result would have been 58%.

The Special Fund does not assert that the ALJ's percentage calculation was mathematically incorrect. It's argument is that the ALJ was without authority to check and to correct the erroneous percentage calculation. Under these circumstances, however, we believe that the ALJ did act within his authority when he checked the calculation of the percentage of normal represented by Dr. Anderson's FEV1 test value and when he found that the correct percentage represented by that value was 78%.

Next, the Special Fund argues that, pursuant to KRS 342.732(2), if either the FVC or the FEV1 value is greater than 80% of the predicted normal value, a claimant does not qualify for benefits under KRS 342.732(1)(b). Because this claimant's largest FVC exceeded 80% of the predicted normal, the Special Fund argues that, regardless of the fact that his FEV1 was less than 80%, he qualifies only for Retraining Incentive (RIB) benefits under KRS 342.-732(1)(a).

KRS 342.732(2) reads as follows:

The presence of respiratory impairment resulting from exposure to coal dust shall be established by using the largest

forced vital capacity (FVC) value or the largest forced expiratory volume in one second (FEV1) value determined from the totality of all such spirometric testing performed in compliance with accepted medical standards.

As noted by both the Court of Appeals and the Board, the interpretations of the Special Fund and of the ALJ both conform to common usage of the language found in the statute. Because the intent of the legislature is not clear in this regard, it is necessary to consult outside sources in an attempt to ascertain that intent. See, *Epsilon Trading Co. v. Revenue Cabinet*, Ky.App., 775 S.W.2d 937 (1989).

KRS 342.316(2)(b)2.b. governs the admissibility of evidence obtained by spirometric testing. It requires that FVC or FEV1 values reported by a physician be the largest obtained from at least three acceptable spirometric maneuvers. The highest value reported by a physician for FVC or FEV1, therefore, represents at least two other values, both of which are less than or equal to the value used in evidence. Where a claimant's highest FEV1 value in evidence is less than 80%, he actually has exhibited at least three FEV1 values of less than 80% to each physician who submitted medical evidence.

According to the *Guides*, upon which the legislature relies in KRS 342.732 and KRS 342.316, spirometry is a forced expiratory maneuver which indicates the degree of pulmonary impairment. There are three component parts of the maneuver: forced vital capacity (FVC), forced expiratory volume in the first second (FEV1) and the ratio of these measurements expressed as a percentage (FEV1/FVC ratio). The *Guides* indicate that FVC is a valid and reliable index of significant pulmonary impairment due to interstitial restrictive lung disease such as pneumoconiosis. FEV1 measures the degree of pulmonary impairment due to obstructive airways disease, an example of which is chronic bronchitis. The *Guides* note a high correlation between work status and FEV1 values. Because the result of either test is affected by the degree of the patient's cooperation, the *Guides* indicate that the greatest result

obtained on each test most accurately represents the actual impairment. They also indicate that a patient may suffer pulmonary impairment due to either restrictive or obstructive disease, or due to both. An impairment exists if either the FVC or the FEV1 is abnormal.

The purpose of KRS 342.732 is to establish a scheme of benefits for coal workers who have contracted pneumoconiosis. When KRS 342.732(1)(a) is compared with KRS 342.732(1)(b), it is apparent that the legislature intended to award a greater level of benefits to claimants who experience significant respiratory impairment as a result of their exposure to coal dust. We note that KRS 342.732(1)(b) does not restrict respiratory impairment to that resulting from pneumoconiosis, but refers to respiratory impairment resulting from exposure to coal dust. It is also apparent from KRS 342.732(2) that the legislature intended for both restrictive impairment, as indicated by the FVC value, and obstructive impairment, as indicated by the FEV1 value, to be considered in determining the level of benefits awarded. Under these circumstances, we believe it more likely that where a claimant exhibits differing degrees of restrictive and obstructive impairment, the legislature intended to award benefits based on the more severe impairment resulting from exposure to coal dust, regardless of whether it is due to pneumoconiosis or to obstructive airways disease. We, therefore, interpret KRS 342.732(2) to require that if either the largest FVC value or the largest FEV1 value is 55% or more but less than 80% of the predicted normal, a claimant may qualify for benefits under KRS 342.732(1)(b).

It is no longer disputed that claimant suffers from category 1 coal workers' pneumoconiosis or that claimant's greatest FVC value is not less than 80% of the predicted normal value. The Special Fund now argues that claimant's FEV1 value of 78% of the predicted normal did not result from his exposure to coal dust but was caused solely by his history of cigarette smoking. This argument was not raised before the ALJ or the Workers' Compensa-

tion Board. The Special Fund's argument to the ALJ and the Workers' Compensation Board was, in effect, that where a difference in the FVC and FEV1 values would qualify claimant for either of two levels of benefits, the highest value must be used and the claimant awarded the lower level of benefits. We will, therefore, refrain from addressing the issue further.

Accordingly, because claimant has contracted category 1 pneumoconiosis and has exhibited FEV1 spirometric test values of less than 80% of the predicted normal values, he was properly awarded benefits pursuant to KRS 342.732(1)(b). The decision of the Court of Appeals to affirm the decisions of the Workers' Compensation Board and the Administrative Law Judge is hereby affirmed.

All concur.