Vicki G. NEWBERG, Acting Director of Special Fund, Appellant,

v.

Russell REYNOLDS, National Mines Corporation, Bruce W. Cowden, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 91–SC–821–WC.

Supreme Court of Kentucky.

May 14, 1992.

John E. Stephenson, Labor Cabinet, Special Fund, Louisville, for appellant.

Ronnie Merel Slone, Prestonsburg, for appellee Reynolds.

David H. Neeley, Francis, Kazee & Francis, Prestonsburg, for appellee Nat. Mines Corp.

## OPINION OF THE COURT

Claimant, now fifty-four years of age, worked in the coal mining industry for approximately 33 years, 20 years of which were underground. On March 31, 1988, he was laid off from work. Thereafter he filed a claim for compensation benefits and alleged that he was permanently, occupationally disabled as a result of his having contracted coal workers' pneumoconiosis.

The Administrative Law Judge (ALJ) reviewed the medical evidence and ruled that claimant had contracted category 1 coal workers' pneumoconiosis. He noted that the highest FVC value was greater than 80% of the predicted normal value; however, the highest FEV1 value was less than 80% but greater than 55% of the predicted normal value. Accordingly, the ALJ found that claimant had sustained a 75% permanent, partial disability and ruled that claimant was entitled to benefits pursuant to KRS 342.732(1)(b). That ruling was affirmed by the Workers' Compensation Board (Board) and the Court of Appeals.

This case, in part, concerns whether KRS 342.732 should be construed to require that benefits awarded to a claimant be based on the highest spirometric test value, whether it be FVC value or FEV1 value. The Special Fund asserts that, because claimant's highest FVC value was greater than 80% of the predicted normal value, he should be awarded only a retraining incentive benefit pursuant to KRS 342.732(1)(a), regardless of the fact that claimant's highest FEV1 value was less than 80% of the predicted normal value.

In Newberg v. Wright, Ky., 824 S.W.2d 843 (1992), this Court recently addressed the interpretation of KRS 342.732(1)(b) and KRS 342.732(2). We held that if either the largest FVC value or the largest FEV1 value is 55% or more but less than 80% of the predicted normal value, a claimant could qualify for benefits pursuant to KRS 342.732(1)(b). In that case we declined the Special Fund's invitation to discuss the issue of whether Wright's obstructive respiratory impairment (chronic bronchitis), as indicated by an FEV1 value that was 78% of the predicted normal, was caused by his history of cigarette smoking or by his history of exposure to coal dust, because the issue had not been raised before the ALJ or the Board.

Upon review of KRS 342.732 and KRS 342.316(2)(b), it is evident that the legislature was precise in setting forth the standards of proof required in a coal workers' pneumoconiosis claim pursuant to KRS 342.732(1)(b). A claimant must prove that he has contracted pneumoconiosis and that the disease results from a work-related exposure to coal dust. KRS 342.732(1). While the diagnosis of coal workers' pneumoconiosis, based on the reading of a claimant's X-rays, is dependent on the subjective interpretation of those X-rays by the radiologist, the legislature prescribed both the standards for acceptable X-rays and the classification system to be used in interpreting them. KRS 342.732(1)(b), KRS 342.316(2)(b)2.a.

Evidence of the required degree of respiratory impairment, as prescribed by KRS 342.732(2), is objective and based on the claimant's performance on the spirometric tests, the results of which are to be obtained and reported in accordance with KRS 342.316(2)(b)2.b. We note also that both KRS 342.732(1)(b) and KRS 342.732(2) refer to "respiratory impairment resulting from exposure to coal dust." It is apparent when reviewing the American Medical Association's Guides to the Evaluation of Permanent Impairment, upon which the legislature relied in drafting these statutes, that depressed spirometric test values may measure respiratory impairment caused by factors other than exposure to coal dust. Therefore, in a claim for benefits pursuant to KRS 342.732(1)(b) the claimant must prove not only that his spirometric test

results indicate the requisite degree of respiratory impairment, he must also prove that his exposure to coal dust was a significant factor in causing the impairment.

Contrary to the assertions by the Special Fund that an obstructive respiratory impairment, such as is caused by chronic bronchitis or emphysema, does not result from exposure to coal dust, there was evidence in this case that the incidence of chronic bronchitis, as indicated by a depressed FEV1 value, is significantly higher in coal miners than in non-miners. The two physicians who were asked testified that chronic bronchitis is associated both with the inhalation of coal dust and with cigarette smoking. Once the condition is present, continued exposure to coal dust aggravates the condition. There was also medical evidence that when a person who is exposed to coal dust also smokes, the degree of obstructive respiratory impairment caused by either type of exposure cannot be differentiated. There was no testimony to the contrary. While Drs. Anderson and Lane attributed claimant's obstructive pulmonary impairment to his history of cigarette smoking, they were not questioned about what role his exposure to coal dust may have played in causing the condition. The two physicians who were questioned on this point testified that, regardless of his smoking history, claimant's exposure to coal dust was a significant causative factor in the respiratory impairment which he exhibited.

In the case at bar, the record contains proof of each of the elements required by KRS 342.732(1)(b). Claimant's X-rays and medical testimony indicated that he had contracted category 1 pneumoconiosis. The disease resulted from his work-related exposure to coal dust. His FEV1 spirometric test value was more than 55% but less than 80% of the predicted normal value, and there was evidence that his exposure to coal dust was a substantial cause of the respiratory impairment which his depressed FEV1 value represented.

The question then becomes whether or not the entire 75% occupational disability authorized by KRS 342.732(1)(b) is compensable. It is apparent from reading KRS 342.732 that the legislature sought to create a scheme of benefits for workers who had contracted coal workers' pneumoconiosis. It is also apparent that they sought to award a higher level of benefits to those workers who demonstrated a respiratory impairment which resulted from exposure to coal dust in addition to demonstrating category 1 pneumoconiosis. Because there is no evidence that the degree of impairment attributable to exposure to coal dust and to smoking can be separated, there is at present no medical basis to rule that a particular portion of the resulting occupational disability is not compensable because it is due to cigarette smoking. Furthermore, the legislature has provided no statutory formula for apportioning compensability where smoking is a contributory cause of a claimant's respiratory impairment and, therefore, of his occupational disability.

Because claimant has proved that he has incurred the requisite respiratory impairment, because he has proved that his exposure to coal dust was a medically significant cause of that impairment, and because the Special Fund has not produced evidence that would compel a contrary finding, we hold that claimant's entire occupational disability is compensable. The award of benefits pursuant to KRS 342.732(1)(b) was proper. Accordingly, the decision of the Court of Appeals is hereby affirmed.

All concur.