Everett WATKINS, Appellant,

v.

AMPAK MINING, INC.; Larry D. Beale, Director of Special Fund; Eric D. Hall, ALJ; and Workers' Compensation Board of Kentucky, Appellees.

No. 91–CA–1922–WC.

Court of Appeals of Kentucky.

July 10, 1992.

Ronnie M. Slone, Prestonsburg, for appellant.

Arnold Turner, Jr., Phillip G. Taylor, Prestonsburg, for Ampak.

David R. Allen, Louisville, for Special Fund.

Before GUDGEL, HOWERTON and WILHOIT, JJ.

HOWERTON, Judge.

Everett Watkins petitions for review of a decision of the Workers' Compensation Board reversing and remanding an order of the Administrative Law Judge (ALJ) who had granted Watkins income benefits for 425 weeks upon a 75 percent disability from occupational pneumoconiosis, pursuant to KRS 342.732(1)(b). The Board determined that Watkins' award must be limited to retraining incentive benefits (RIB) under KRS 342.732(1)(a). We agree and affirm.

Watkins filed a claim for permanent occupational disability resulting from coal workers' pneumoconiosis. The facts are generally undisputed. The ALJ based his award solely on the spirometric test values

reported by a Dr. Myers, which were less than 80 percent of the predicted lung capacity of Watkins. The ALJ ignored the reports of two other physicians who reported both the FVC and the FEV1 values exceeding 80 percent of the predicted normal, which would limit Watkins to RIB according to KRS 342.732(1)(a). No challenge has been made that either of these evaluations did not conform to accepted medical standards.

The issue raised by Watkins involves the interpretation of KRS 342.732(2), which provides as follows:

The presence of respiratory impairment resulting from exposure to coal dust shall be established by using the largest forced vital capacity (FVC) value or the largest forced expiratory volume in one second (FEV1) value determined from the *totality* of *all* such spirometric testing performed in compliance with accepted medical standards. (Emphasis added.)

The Board concluded that the statute requires the ALJ to use the largest FVC value or largest FEV1 value reported by the other two physicians in determining a claimant's level of occupational disability. Watkins claims that the Board erred as a matter of law in reversing the ALJ's order and award, and in limiting him to benefits pursuant to KRS 342.732(1)(a), rather than tier two benefits pursuant to KRS 342.-732(1)(b). He argues that the ALJ has discretion to pick and choose from among the spirometric values reported by the medical experts in determining his level of disability.

Generally speaking, Watkins' argument is correct, but in this situation, the Board agreed with the Special Fund's interpretation of KRS 342.732(2) and concluded that it requires the ALJ to use the single highest valid reported values for FVC or FEV1 from all of the reported spirometric testing. The Board decided that the language of the statute is clear and unambiguous. Since two of the physicians reported FVC values and FEV1 values greater than 80 percent of that predicted, the Board held that Watkins was only entitled to rehabili-

tation benefits for a maximum of 208 weeks.

The meaning of various parts of KRS 342.732(2) has been the topic of much litigation recently. *Newberg v. Wright,* Ky., 824 S.W.2d 843 (1992), and *Newberg v. Chumley,* Ky., 824 S.W.2d 413 (1992). While the language of the statute may not be as clear and unambiguous as indicated by the Board, the interpretation given to the statute by the Special Fund and the Board fits within the common usage of the language found in the statute.

To ascertain the legislative intent, one must look to outside sources. *Newberg v. Wright, supra,* 824 S.W.2d at 845. KRS 342.732 makes specific reference to the American Medical Association's (AMA) guidelines. The guidelines provide for a consistent objective standard for evaluating spirometric test results. They indicate that the greatest result obtained on either the FVC or FEV1 test is the most accurate representation of any actual lung impairment. The 1988 guidelines also make it clear that if either the FVC or FEV1 value is below a certain percentage of predicted value, there is some impairment. In the present case, two physicians reported both FVC and FEV1 values greater than the 80 percent limit under KRS 342.732(1)(b).

■ When spirometric tests are conducted according to accepted methods, on properly functioning equipment, and with the patient being in the same general condition, the results will be the same with little variation or deviation. If the patient is temporarily suffering from a cold, an allergy, or other problem that impairs his breathing, his FVC or FEV1 will naturally be lower. Tests should not be conducted during such periods, but if they are, such errors should be brought out during questioning of the physician who conducted the test and/or during questioning of the claimant. In this case, it is clear that the testing by the two physicians correctly revealed Watkins' best, true lung capacities and capabilities.

■ KRS 342.316(2)(b)2.b. governs the admissibility of evidence obtained by spiro-

metric testing. The statute requires that a physician report the highest FVC and FEV1 values from at least three acceptable tests. Thus, the ALJ is limited by this statute to use the highest FVC and FEV1 values reported by each physician who submitted such test results. While the ALJ has the discretion to use either the FVC or FEV1 test category, it appears from KRS 342.732(2) that the legislature intended for the ALJ to use the single highest value from the chosen category to determine respiratory impairment. If the highest value is at least 55 percent but less than 80 percent of the predicted normal, a claimant qualifies for benefits under KRS 342.-732(1)(b). *Newberg v. Wright, supra.*

In that case, the issue was whether the statute requires that benefits awarded to a claimant be based on the highest test value, whether it be FVC value or FEV1 value. The Court decided that either value could be used. In reaching its decision, the Supreme Court of Kentucky reviewed the medical evidence given by the three reporting physicians to determine the level of benefits to award the claimant. The fact that the highest of the three reported FEV1 values was less than 80 percent resulted in the claimant qualifying for benefits under KRS 342.732(1)(b). The Court based its decision on *all* the test values exhibited by the claimant. *Id.,* 824 S.W.2d at 846.

The ALJ has the discretion to determine from the evidence whether the claimant has pneumoconiosis and whether there is a causal connection relating it to the claimant's employment. The ALJ also has the discretion to use either spirometric value in determining a claimant's level of occupational disability. However, if the ALJ is allowed the discretion to prefer one physician's spirometric tests over the tests of other physicians, then, in effect, he or she is invalidating the other tests. The validity of spirometric tests is a medical determination which requires medical expertise. In this case, there was no testimony or other medical evidence indicating that the tests performed by the other doctors were invalid or unreliable. The evidence in this case contains proof that Watkins' FVC and FEV1 test values were both greater than 80 percent of the predicted normal.

When considering KRS 342.-732(2), KRS 342.316(2)(b)2.b., and the AMA guidelines, it appears that the legislature intended that all reported spirometric test values be used to determine the level of benefits to award. The ALJ is to consider the totality of all valid and reliable spirometric tests performed on Watkins. In this case, the values exceed 80 percent of his predicted normal capacity, and his claim is limited to the benefits provided by KRS 342.732(1)(a).

Although Ampak Mining now argues that the decision of the Board should be affirmed, it argued before the Board that the ALJ's decision should not be disturbed. However, the Board agreed with the appeal and argument of the Special Fund and ordered the ALJ to enter an award of RIB under KRS 342.732(1)(a). Ampak's benefit from the action by the Special Fund is not challenged or questioned.

The decision of the Workers' Compensation Board is affirmed.

WILHOIT, J., concurs.

GUDGEL, J., concurs in result without separate opinion.