Vicki G. NEWBERG, Acting Director of Special Fund, Appellant,

v.

Delmer GARRETT; Island Creek Coal Company; Dwight T. Lovan; Administrative Law Judge; and Workers' Compensation Board, Appellees.

ISLAND CREEK COAL COMPANY, Appellant,

v.

Delmer GARRETT; Vicki G. Newberg, Acting Director of Special Fund; Dwight T. Lovan, Administrative Law Judge; and Workers' Compensation Board, Appellees.

Delmer GARRETT, Appellant,

v.

ISLAND CREEK COAL COMPANY; Vicki G. Newberg, Acting Director of Special Fund; Dwight T. Lovan, Administrative Law Judge; and Workers' Compensation Board, Appellees.

Nos. 92-SC-861-WC, 92-SC-862-WC, 92-SC-879-WC.

Supreme Court of Kentucky.

May 27, 1993.

David Randall Allen, John E. Stephenson, Labor Cabinet–Special Fund, Louisville, for Newberg.

Joseph H. Kelley, Leland Monhollon, Madisonville, for Garrett.

A. Stuart Bennett, Jackson & Kelly, Lexington, for Island Creek Coal Co.

## OPINION OF THE COURT.

Claimant sought total disability benefits for a combination of coal worker's pneumoconiosis and occupational injury. The Administrative Law Judge (ALJ) ruled that claimant's work-related back injury had re-

sulted in a 55% occupational disability. Regarding the pneumoconiosis claim, the quality of the x-rays varied greatly, and the range of disease reported extended from category 0/0 to category 2/1.

The ALJ noted that, of the four physicians who performed pulmonary function tests, Doctors Lane and Gallo, who testified for the employer, reported that the results were invalid due to poor patient effort. He also noted that the report submitted by Dr. Baker on behalf of the claimant indicated that, due to the relationship between the FEV1 value (forced expiratory volume in the first second) and the MVV value (maximum voluntary ventilation), there was a question concerning either poor patient effort or neuromuscular dysfunction. Nonetheless, Dr. Baker concluded that the results were valid and reported an FEV1 value of greater than 80% but an FVC value of less than 80%. He attributed the pulmonary impairment primarily to coal workers' pneumoconiosis.

Dr. Myers, who also testified for the claimant, reported an FEV1 value of greater than 80% and an FVC value (forced vital capacity) of less than 80%, which he attributed to claimant's lung disease and to his obesity. The ALJ stated, however, that the report also indicated a large discrepancy between the FEV1 value and the MVV value. The ALJ concluded that, as had been the case with Dr. Baker's test results, such a discrepancy raised a question as to the claimant's effort on the tests performed by Dr. Myers. As further evidence of claimant's lack of effort on the spirometric tests, he noted that all blood gas studies were normal, with the possible exception of Dr. Baker's which showed a slight hypoxemia.

The ALJ recognized that there was evidence to support either a finding that claimant had not contracted pneumoconiosis or that he had contracted pneumoconiosis and was entitled to benefits under any section of KRS 342.732. However, after reviewing the evidence, he concluded that claimant had contracted category 1 disease. Regarding the spirometric studies, he concluded that the evidence as a whole indicat-

ed that all of the tests were invalid due to claimant's lack of effort. If claimant did experience a restrictive impairment, it was due to his obesity and not to pneumoconiosis. In view of the evidence, the ALJ awarded only a retraining incentive benefit. KRS 342.732(1)(a). The ALJ further decided that, particularly in view of claimant's age and past relevant work history, as well as both his restrictions and capabilities, claimant had suffered no more occupational disability from the combination of pneumoconiosis and the back injury than the back injury alone would have caused. The back injury, by itself, would have prevented claimant's return to coal mining. He concluded that claimant was not totally, occupationally disabled under the guidelines of *Osborne v. Johnson*, Ky., 432 S.W.2d 800 (1968) and, therefore, not entitled to a lifetime award. He ordered that the retraining incentive benefit be paid concurrently with the injury benefit.

The Workers' Compensation Board (Board) was divided on the issue of whether the ALJ properly limited claimant to a retraining incentive benefit rather than awarding a 75% permanent, partial occupational disability. The majority emphasized that there was no competent medical testimony that Dr. Myers' and Dr. Baker's spirometric tests were invalid and ruled that the ALJ was required in this case: 1.) to rely on the two studies reported as valid; and 2.) to rely on the lower of the two statutorily required spirometric values, in this case the FVC value. Because claimant's FVC values in the two valid studies were less than 80% of the predicted normal, the ALJ was required to award a 75% disability. KRS 342.732(1)(b), (2).

The Board affirmed the ALJ's conclusion that claimant was not entitled to benefits for total, occupational disability, noting that there is no requirement that total disability be awarded in every case where a combination of permanent, partial disabilities equals or exceeds 100%. *Brownies Creek Collieries v. Lingar*, Ky.App., 794 S.W.2d 641 (1990). The result was that claimant would receive two 425 week awards, a 75% occupational disability

award for pneumoconiosis and a 55% occupational disability award for the injury.

Board member Miller dissented because he believed that, although the ALJ was authorized to award benefits pursuant to KRS 342.732(1)(b), he was not required to do so. Where the greatest FVC value and the greatest FEV1 value would entitle a claimant to different levels of benefits, KRS 342.732(2) does not require the ALJ to rely on the lesser value and to award the greater benefit. Rather, while he must rely on the greatest value obtained for each spirometric test, he may, if supported by substantial evidence, choose which of the two tests on which he will rely in determining the level of benefits to award.

The Court of Appeals affirmed the Board on both issues. All parties have appealed.

In *Newberg v. Wright*, Ky., 824 S.W.2d 843, 845 (1992), we interpreted KRS 342.-732(2) as authorizing the award of benefits for coal workers' pneumoconiosis based on the more severe impairment resulting from exposure to coal dust, regardless of whether the impairment was due to pneumoconiosis or to obstructive airways disease. In that case, because there was evidence that the worker's depressed FEV1 value was caused by chronic occupational bronchitis that had resulted from his exposure to coal dust, the worker was entitled to receive benefits pursuant to KRS 342.732(1)(b). Nowhere did we state that the ALJ was, in every instance, required to award benefits based on the greater respiratory impairment exhibited by a worker, regardless of evidence that the apparent impairment was caused by factors other than exposure to coal dust. Our holding was that:

> if either the largest FVC value or the largest FEV1 value is 55% or more but less than 80% of the predicted normal, a claimant *may* qualify for benefits under KRS 342.732(1)(b). (Emphasis added.)

*Newberg v. Wright, supra,* at 845.

Subsequently, in *Newberg v. Reynolds,* Ky., 831 S.W.2d 170 (1992), the coal worker had a history of smoking cigarettes. Medical evidence indicated that he had chronic bronchitis as well as category 1 pneumoconiosis. There was evidence that smoking cigarettes, like exposure to coal dust, can cause chronic bronchitis. In that case we noted that, because depressed spirometric values could be caused by factors other than disease which resulted from exposure to coal dust, a worker was required by KRS 342.732 to prove not only that he suffered from the requisite impairment, but also that exposure to coal dust was a medically significant factor in causing the demonstrated impairment.

In *Wright v. Hopwood Mining*, Ky., 832 S.W.2d 884 (1992), we noted that because the results of spirometric testing are directly related to the degree of the subject's effort, the AMA *Guides to the Evaluation of Permanent Impairment (Guides)* indicate that the greatest result on each test category most accurately represents any actual impairment. Because a subject can artificially depress his spirometric values by failing to give his best effort, we held that none but the highest FVC or the highest FEV1 value in evidence could be the basis for determining the level of benefits to be awarded. We note that there was no argument that the worker in that case had failed to cooperate in the testing procedures. In the opinion we explained that, although the ALJ's discretion was limited in certain respects, the ALJ continued to have discretion to determine from the evidence whether a worker suffered from coal workers' pneumoconiosis; whether the condition was caused by his employment; and whether exposure to coal dust was a medically significant factor in causing any respiratory impairment which the claimant exhibited.

█ Applying the foregoing to the instant case, we note that, although the ALJ explained in great detail why he had concluded that all the spirometric results in evidence were invalid, there was no medical testimony regarding precisely what relationship between a worker's FEV1 value and MVV value indicates that the overall test results are invalid. Based on a comment, not by Dr. Baker, as stated by the ALJ, but by Dr. Myers, the ALJ determined that the large discrepancy between the FEV1 and MVV values reported by

Doctors Myers and Baker indicated invalid test results. However, no physician reviewed all of the reported test results and determined that to be the case. Furthermore, a review of the record indicates that the discrepancies in the FEV1 and MVV values reported by Doctors Baker and Myers were substantially different. There was no evidence of how large a discrepancy between FEV1 and MVV is necessary to indicate a poor patient effort or of the degree to which other factors might cause such a discrepancy. Had such testimony been a part of the record, there may have been justification for the ALJ's conclusion that the evidence as a whole demonstrated that the depressed spirometric values reported by Doctors Myers and Baker were caused by factors other than claimant's exposure to coal dust. In its absence, however, we do not believe that his conclusion was supported by substantial evidence.

The evidence of record compelled a finding that claimant's greatest FVC value was less than 80% of the predicted normal and that the impairment resulted from his exposure to coal dust. Accordingly, claimant was entitled to benefits pursuant to KRS 342.732(1)(b).

The terms "functional impairment" and "occupational disability" are not synonymous, but have separate and distinct meanings for compensation purposes. Unlike claims controlled by KRS 342.730, in which occupational disability is determined according to the criteria of KRS 342.0011, claims controlled by KRS 342.732(1)(b) are subject to a presumption of occupational disability. The presumption of occupational disability due to coal workers' pneumoconiosis contained in KRS 342.732(1)(b) is based solely on the worker's pulmonary impairment and not on his actual occupational disability. Therefore, an inference that a worker is totally, occupationally disabled, simply because the injury and pneumoconiosis awards equal or exceed 100%, is not warranted. In this case the ALJ made a specific finding that claimant was not totally, occupationally disabled. That specific finding was supported by substantial evidence, and claimant produced no compelling evidence to the contrary. Accordingly, claimant was not entitled to permanent, total, occupational disability benefits even though his combined disability awards exceeded 100%. *Brownies Creek Collieries v. Lingar, supra.*

The decision of the Court of Appeals is hereby affirmed, and the case is hereby remanded to the Administrative Law Judge for the entry of an award that is consistent with this opinion.

All concur.