ARCH ON THE NORTH FORK,
INC., Appellant,

v.

Clifton CAMPBELL; Vicki G. Newberg, Acting Director of Special Fund; and Workers' Compensation Board, Appellees,

and

Vicki G. NEWBERG, Acting Director of Special Fund, Appellant,

v.

Clifton CAMPBELL, Arch of Kentucky (Arch on the North Fork, Inc.), and Workers' Compensation Board, Appellees.

No. 93–SC–250–WC, 93–SC–262–WC.

Supreme Court of Kentucky.

Nov. 24, 1993.

Denise Moore Davidson, Randall Scott May, Barret, Haynes, May, Carter & Roark, P.S.C., Hazard, for appellant/appellee Arch on the North Fork, Inc.

David Randall Allen, Labor Cabinet, Special Fund, Louisville, for appellant/appellee Newberg.

Jonathan Stanley, Rebecca Baylous, Wilson & Stanley, Lexington, for appellee Campbell.

## OPINION OF THE COURT

Claimant was employed in the coal industry for 13 years, wherein his duties involved driving a coal truck and operating heavy equipment at his employer's surface mine. The instant appeal concerns his claim for benefits due to coal workers' pneumoconiosis.

Claimant's last injurious exposure occurred on December 10, 1987, when he injured his back. That claim was settled for a lump sum which represented a 45.54% occupational disability. In addition to his other physical problems, claimant had suffered from shortness of breath for several years due to asthma. There was no assertion that the asthma was in any way related to claimant's employment.

The Administrative Law Judge (ALJ) reviewed the medical evidence and concluded that claimant had contracted category 1 pneumoconiosis which resulted from his exposure to coal dust. Claimant's highest FVC value was greater than 55% of the predicted normal, and his highest FEV1 value was less than 55% of the predicted normal. She found that the obstructive impairment indicated by claimant's depressed FEV1 values clearly was attributable to his asthmatic condition. She noted that a restrictive impairment, as indicated by depressed FVC values, may be related to pneumoconiosis and that all of claimant's FVC values were greater than 55% of the predicted normal. She then cited Dr. Anderson's opinion that claimant's pulmonary impairment was attributable to bronchitis and Dr. Baker's opinion that it was secondary to bronchial asthma or secondary to dust exposure in the coal mine industry. The other physicians who performed pulmonary function studies attributed claimant's respiratory impairment to asthma. She concluded that on the evidence she could not find that claimant's restrictive impairment was caused by pneumoconiosis. Benefits were therefore awarded pursuant to KRS 342.732(1)(a).

On appeal to the Workers' Compensation Board (Board), claimant argued that the ALJ was without authority to ignore his FEV1 values, regardless of whether they were related to his exposure to coal dust, and was required to award a total disability benefit pursuant to KRS 342.732(1)(c). The employer cross-appealed, asserting that the irrebuttable assumption of total, occupational disability contained in KRS 342.732(1)(c) was unconstitutional. The Board affirmed the ALJ, citing KRS 342.732(2) and stating that the ALJ was free to establish pulmonary impairment using either the largest FVC value or the largest FEV1 value. She was not required to award benefits pursuant to KRS 342.732(1)(c) simply because claimant's FEV1 value fell within the range set forth in that subsection. Likewise, after the ALJ chose to rely on the largest FVC value, which fell within the range set forth in KRS 342.732(1)(b), she was authorized to determine that the impairment indicated by that value did not result from exposure to coal dust and to award benefits pursuant to KRS 342.732(1)(a).

█ The employer and the Special Fund have appealed to this Court because the Court of Appeals reversed based on its interpretation of *Newberg v. Chumley*, Ky., 824 S.W.2d 413 (1992) and *Wright v. Hopwood Mining*, Ky., 832 S.W.2d 884 (1992). We reverse.

KRS 342.732(1)(c) states, in pertinent part, as follows:

(c) If the administrative law judge finds that an employee has a radiographic classification of category 1/0, 1/1, or 1/2, based on the latest ILO International Classification of Radiographics, and respiratory impairment as evidenced by spirometric test values of less than fifty-five percent (55%) of the predicted normal values contained in the chapter on the respiratory system of the latest edition available of the Guides to the Evaluation of Permanent Impairment published by the American Medical Association, there shall be an irrebuttable presumption that the employee is totally dis-

abled resulting from exposure to coal dust. . . .

Claimant does not assert that his respiratory impairment was caused by work but argues that because subsection (1)(c), unlike subsections (1)(a) and (1)(b), does not contain the language "respiratory impairment resulting from exposure to coal dust," but only refers to "respiratory impairment," the legislature intended for any type of respiratory impairment, if severe enough, to entitle a worker to total, occupational disability benefits. We disagree.

KRS 342.732 was enacted to control the award of benefits to workers who have contracted coal worker's pneumoconiosis. In view of the fact that benefits paid under subsections (1)(a), (b) and (d) are available only to workers whose condition results from occupational exposure to coal dust and that subsections (2) and (3) refer only to the measurement of respiratory impairment which results from exposure to coal dust, we believe that the only rational interpretation is to include the modifying phrase "resulting from exposure to coal dust" in subsection (1)(c). Any other interpretation would produce absurd results. A review of the entire statute makes it clear that one of the purposes of KRS 342.732 was to create irrebuttable presumptions as to the degree of occupational disability experienced by workers with varying degrees of physical impairment caused by exposure to coal dust. In no way does the statute relieve a worker seeking benefits due to coal workers' pneumoconiosis of the burden of proving that the exposure to coal dust which he incurred at work is the cause of the physical condition upon which his claim of occupational disability is based.

In *Newberg v. Chumley, supra,* the Court refrained from discussing whether an award pursuant to KRS 342.732(1)(c) would have been required if the worker's obstructive impairment, as indicated by depressed FEV1 values, had been caused by cigarette smoking rather than his exposure to coal dust because the issue had not been raised before the ALJ. In view of the evidence in that case and in the absence of an argument to the ALJ that the worker's FEV1 value of 47% represented an impairment caused by some-

thing other than exposure to coal dust, he was entitled to benefits pursuant to KRS 342.732(1)(c).

Subsequently, in *Newberg v. Wright,* Ky., 824 S.W.2d 843 (1992), we ruled that an ALJ was authorized to award benefits pursuant to KRS 342.732(1)(b) based on the worker's more severe impairment, whether it was due to pneumoconiosis or to obstructive airways disease, if the worker had proved that the impairment resulted from occupational exposure to coal dust. Depressed spirometric values may measure respiratory impairment which results from factors other than exposure to coal dust such as cigarette smoking. Therefore, where there was evidence that the worker smoked and the degree to which exposure to coal dust and cigarette smoking each contributed to the overall impairment could not be separated, the worker was required to prove that exposure to coal dust was a medically significant cause of the impairment he exhibited. *Newberg v. Reynolds,* Ky., 831 S.W.2d 170 (1992).

■ We have noted that, although the ALJ's discretion is, to some degree, circumscribed by the standards set forth in KRS 342.732, the ALJ remains free to decide many issues among which is whether occupational exposure to coal dust is a medically significant factor in causing any respiratory impairment which the worker exhibits. *Wright v. Hopwood, supra.* As noted by the Court of Appeals in *Watkins v. Ampak Min., Inc.,* Ky.App., 834 S.W.2d 699 (1992), it is within the discretion of the ALJ to determine whether a worker has contracted occupational pneumoconiosis and to choose to rely on either spirometric value to determine the degree of the worker's occupational disability if the choice is supported by substantial evidence. Recently, in *Newberg v. Garrett,* Ky., 858 S.W.2d 181 (1993), we again emphasized that nowhere has this Court stated that the ALJ is, in every instance, required to award benefits based on the greater respiratory impairment exhibited by a worker, regardless of evidence that the impairment was caused by something other than exposure to coal dust.

In the instant case, the ALJ determined that claimant's depressed FEV1 values were caused by asthma and that claimant had not shown that his depressed FVC values were caused by pneumoconiosis. Claimant's burden on appeal was to show that the evidence in his favor was so overwhelming that a finding in his favor was compelled. *Wolf Creek Collieries v. Crum*, Ky.App., 673 S.W.2d 735 (1984). Because there was no compelling evidence that exposure to coal dust caused either of the depressed spirometric values, the Board properly affirmed the decision of the ALJ.

The decision of the Court of Appeals is hereby reversed, and the award made by the ALJ is reinstated.

All concur.