**CITY OF PAINTSVILLE, Appellant,**

v.

**Edgel Ray RATLIFF; George S. Schuhmann, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 94–SC–452–WC.

Supreme Court of Kentucky.

Dec. 22, 1994.

---

Thomas L. Ferreri, William A. Miller, Sr., Ferreri & Fogle, Louisville, for appellant.

Charles K. Belhasen, Paintsville, for appellee Ratliff.

## OPINION OF THE COURT

This workers' compensation case involves the application of KRS 342.140(4) to determine a workers' average weekly wage (AWW) in order to calculate disability benefits. That statute provides as follows:

(4) If the employee was a minor, apprentice, or trainee when injured, and it is established that under normal conditions his wages should be expected to increase during the period of disability, that fact may be considered in computing his average weekly wage.

Claimant was seventeen years old and working as a volunteer fire fighter on a marquee sign when he was struck in the right eye by a piece of plastic sign material. The Administrative Law Judge (ALJ) found that claimant was temporarily totally disabled from April 3, 1990, until May 15, 1991, when he was released to return to work. The ALJ further concluded that claimant suffered a 33% permanent partial disability due to the eye injury and resulting medical restrictions.

As pointed out by the ALJ, the determination of claimant's average weekly wage involves a seldom-used provision of KRS 342.140. In fact, we found no reported cases involving KRS 342.140(4). Under that provision the ALJ reasoned as follows:

Since the Plaintiff was 17 years of age at the time of his injury he was still a student and only employed on a part time basis at McDonalds. KRS 342.140(4) provides that, if the Employer [sic] was a minor when injured and if it is established that his wages should be expected to increase during the period of disability, that fact may be considered in computing his average weekly wage. In the present claim the Plaintiff has testified credibly to the effect that he expected to go into fire fighting or welding. He is presently working as an EMT and earning $180.00 per week, but he testified that fire fighters earn in the range of $7.76 to $15.00 per hour and that welders earn from $10.00 to $17.00 per hour. These rates result in average weekly wage ranges of $310.40 to $600.00 and $400.00 to $680.00 respectively. This Judge is persuaded that the actual and potential earnings of the Plaintiff demonstrates a reasonable likelihood that his wages should be expected to increase during the period of disability. Given the circumstances in this claim it is found that the Plaintiff had an average weekly wage of $310.40 consistent with a reasonable expectation of earnings as a fire fighter in the geographic area where the Plaintiff resides.

The ALJ's decision was affirmed by the Workers' Compensation Board and the Court of Appeals.

Appellant employer argues on appeal that (1) there is not substantial evidence to support the finding that claimant's expected wage during disability would increase to that of a regularly employed Paintsville fire fighter, (2) that in any event, an expected increase in wage of a minor is not applicable to temporary total disability benefits, and (3) the percentage of claimant's occupational disability was limited to percentage of functional disability determined by AMA guidelines. We affirm on issue number (1), and reverse as to issues (2) and (3).

■ The only guidance provided by the statute is that it must be "established that under normal conditions" the claimant's wages would increase during disability. A great amount of discretion has been placed with the ALJ in determining whether it could be expected that a minor's wages would increase during disability. The ALJ based his decision upon claimant's own testimony that he expected to go into fire fighting or welding. The ALJ noted that he considered this credible testimony and based upon the only evidence submitted regarding the wage scale in those jobs, the ALJ based claimant's AWW on the low end of that scale.

Appellant argues that claimant merely proved that he hoped to be employed in the future as a fire fighter, and lacking evidence that he is qualified to do this work, or trained for such work, or that such work is available, there is not substantial evidence to support the finding that claimant's expected wage during disability would increase to that of a regularly employed fire fighter.

As we stated previously, there are no reported cases decided under this section of the statute and therefore we studied Professor Larson's treatise for guidance.

### § 60.12(c) Adjusting earning capacity of apprentices, nurses and other young workers

The necessity of approximating future earning capacity is often recognized both by judicial decision and by statutes in the special case of young workers or apprentices. For example, a student nurse whose only compensation at the time of injury was board and room, but who was on the verge of obtaining and later did obtain the regular nurse's wage of $7 a day, was awarded compensation on the $7 basis. Some states expressly provide by statute that, when the employee is of such age and experience that his earnings may under natural conditions be expected to increase, that fact may be taken into account in determining his weekly wages. This type of statute has been limited, however, to expectable increases within the same employment; therefore evidence that claimant later greatly increased his wage level by changing to a more skilled occupation cannot be taken as proof of the probable increase. Moreover, in view of the obvious purpose of this kind of adjustment, it is logical to confine it to long-range disabili-

ties and not apply it to temporary disability benefits....

Larson, *Workers' Compensation Law,* § 60.12(c).

■ It is clear that the fact-finder is free to make this determination and factor it into the decision without numerous restrictions. Accordingly, the defendant may present any evidence that is probative to support the contention that an increase would not be expected. However, the statute contemplates "normal conditions," and we have been directed to nothing to show us that under normal conditions claimant could not have worked as a regular fire fighter. Claimant carried his burden of proof to the satisfaction of the ALJ, and appellant was free to present any evidence in rebuttal but failed to do so. Appellant argues that because claimant did not become a fire fighter, and was able to pursue other employment opportunities, it was proven that if he had not been injured he would not have become a regularly employed fire fighter. Simply because after the injury claimant pursued training as an emergency medical technician, it does not follow that he would have, without his disability, chosen not to become a fire fighter.

The statute provides that it must be shown that claimant's wages would increase "during the period of disability." Appellant operates under the misconception that this means claimant must show his wages would be expected to increase during the 425–week pay period. However, claimant is *permanently* disabled; because it is a partial disability, benefits are paid for a limited period of time. It is not accurate that at the end of 425 weeks claimant is no longer disabled. The period of disability is lifetime unless shown otherwise. Therefore, if claimant can show that during the period of his disability, it can be expected that his wages would increase, the ALJ may consider that in determining claimant's AWW. This we believe the ALJ properly did based upon the evidence submitted.

■ We do agree with appellant's second argument that factoring in an expected wage increase is inappropriate when determining temporary total disability benefits. See, *Larson, supra.* KRS 342.140(4) only affects

permanent disability benefits. Temporary benefits must be based upon actual wages. For this reason that portion of the Court of Appeals' decision is reversed.

■ We also agree with appellant's final point that there was not substantial evidence to support an award for 33% occupational disability, and it should have been based upon the 23% functional impairment rating according to the AMA Guides. According to KRS 342.730(1)(b) the percentage of disability is determined by applying the definition of occupational disability found at KRS 342.0011(11) or multiplying the employee's functional impairment rating by 66⅔ of the employee's AWW. KRS 342.0011(11) defines disability as:

> a decrease in wage earning capacity due to injury or loss of ability to compete to obtain the kind of work the employee is customarily able to do, in the area where he lives, taking into consideration his age, occupation, education, effect upon the employee's general health of continuing in the kind of work he is customarily able to do, and impairment or disfigurement.

Appellant argues that claimant did not satisfy the requirement of KRS 342.0011(11) and therefore the percentage of occupational disability must be limited to claimant's functional impairment rating or 23%. Because claimant was earning the same wage at the time of maximum medical improvement and at the time of the injury there was no decrease in his wage earning capacity. Also, it was not demonstrated that he lost the ability to do the work he was customarily able to do since he remained a volunteer fire fighter and was able to do the work required of him at McDonalds and works as an emergency medical technician.

Claimant responds that because KRS 342.140(4) allows the ALJ to consider lost earning potential in determining a minor's AWW, it also permits the fact-finder to consider that when determining occupational disability. KRS 342.730 and KRS 342.140 are separate and distinct provisions and do not operate together.

In order to award benefits for an occupational disability greater than a claimant's es-

tablished functional impairment, KRS 342.0011(11) must be satisfied. In *Osborne v. Johnson,* Ky., 432 S.W.2d 800 at 804 (1968), the Court explained as follows:

> We recognize that the interpretation of the Workmen's Compensation Law that we are adopting herein does not give full recompense for occupational disability in that it does not give consideration to the fact that the workmen's *job* opportunities may have been reduced in number as a result of his injury. However, the inclusion of this factor, would require the use of a highly complicated formula by no means accurate in result. The Workmen's Compensation Law has never approximated the giving of full compensation for the losses attributable to disability.

■ We do note that the AWW determined by the ALJ is the figure used in conjunction with the functional impairment rating in reaching the occupational disability percentage. It is only in that event that KRS 342.140 is involved in calculating occupational disability. We also recognize that this decision comports with the 1994 legislative amendments to KRS 342.730(1)(b) which reiterate that the functional impairment rating is controlling when the employee returns to work at a wage equal to or greater than the employee's pre-injury wage, unless a greater percentage of disability can be established under KRS 342.0011(11). Claimant failed to so establish in this case.

The decision of the Court of Appeals is affirmed in part and is reversed in part and remanded to the ALJ to determine the rate of temporary total disability benefits and percentage of occupational disability consistent with this opinion.

STEPHENS, C.J., and LAMBERT, LEIBSON, REYNOLDS, SPAIN and WINTERSHEIMER, JJ., concur.

STUMBO, J., concurs except that she would affirm on the issue of percentage of ·disability as supported by substantial evidence.