Gary F. MOSELY, Appellant,

v.

FORD MOTOR COMPANY; Special Fund; Robert E. Spurlin, Director of Special Fund; Dennis S. Kline, Administrative Law Judge; and Commonwealth of Kentucky Workers' Compensation Board, Appellees.

No. 97–CA–1049–WC.

Court of Appeals of Kentucky.

March 13, 1998.

Case Ordered Published by Court of Appeals May 15, 1998.

Christina R.L. Norris, Louisville, for appellant.

William P. Swain, Louisville, for Ford Motor Co.

Joel D. Zakem, Labor Cabinet, Louisville, for Special Fund.

Before GUDGEL, C.J., and
BUCKINGHAM and KNOPF, JJ.

## OPINION

BUCKINGHAM, Judge.

Gary F. Mosely (Mosely) has petitioned this court to review an opinion of the Workers' Compensation Board (Board) affirming an opinion of an administrative law judge (ALJ) in which the ALJ found that Mosely suffered no additional occupational disability as a result of a work-related injury that he incurred on October 29, 1993. For the reasons set forth hereinafter, we affirm.

Mosely was born on April 3, 1944, and has been an employee of Ford Motor Company (Ford) for the majority of his adult life. While working for Ford, Mosely developed carpal tunnel symptoms which necessitated surgery in 1985. In 1987, Mosely and Ford entered into a settlement agreement whereby Mosely received a lump-sum settlement from Ford for a one percent impairment to Mosely's body as a whole due to carpal tunnel syndrome in his right hand.

Mosely continued to work for Ford following the settlement, but his job duties were changed so that he would not have to engage in activities such as repetitive pinching, lifting, gripping, or the usage of air tools. His restricted duty job was termed a "top off" job, which involved activities such as raising the hoods and hooking up test plugs on vehicles.

While working at his job in October 1993, Mosely felt a burning sensation and noticed swelling in his right wrist. After having been initially treated with conservative measures by Dr. Morton Kasdan, Mosely was referred to a hand surgeon, Dr. Luis Schecker, who diagnosed Mosely as suffering from scapholunate advanced collapse (SLAC). Dr. Schecker performed wrist fusion surgery on Mosely in February 1994, and Mosely subsequently returned to work at Ford on a full-time basis. However, his job duties were changed again to conform to the restrictions placed on him by Dr. Schecker. Mosely now works at a driving job, consisting of driving vehicles off the assembly line and opening their tailgate release handles.

In May 1994, Mosely filed an application for adjustment of claim in which he sought to reopen his previous claim concerning the carpal tunnel syndrome in his right hand, while also seeking compensation for his left carpal tunnel syndrome and SLAC.

The ALJ issued his original opinion and order in which he found that Mosely's injury was work related but that Mosely had "failed to convince me that he has any occupational disability as a result of his scapholunate separation and fusion surgery...." The ALJ ordered that Mosely's claim for permanent partial disability benefits be dismissed and also denied Mosely's motion to reopen his prior claim as he found "absolutely no evidence of any change in [Mosely's] condition ...."

Mosely appealed the ALJ's opinion and order to the Board which remanded the matter to the ALJ to make findings as to why Mosely had "failed to convince" him that he was suffering from an occupational disability. On remand, the ALJ issued an order stating that he "considered all occupational disability factors" in reaching his conclusions, including Mosely's age, education, work experience, transferrable skills, and current physical condition and limitations. The ALJ also noted that Mosely had returned to work at an equal or greater rate of pay and that there was no indication that his earning capacity would be impacted by his injuries. The ALJ further noted that the restrictions placed upon Mosely following his fusion surgery were no more burdensome than those placed on him due to his carpal tunnel symptoms.

Mosely again appealed to the Board, stating that the ALJ's revised opinion still did not set forth sufficient reasons for his decisions and asking the Board to award him permanent partial disability benefits. The Board, however, affirmed the ALJ's second opinion, stating that the ALJ had "supported his conclusions with facts drawn from the evidence." Mosely then filed his petition for review asking this court to reverse the Board and remand the case to the ALJ with instructions to award him permanent partial disability benefits.

■■■ We will first examine whether the somewhat brief findings by the ALJ in his second opinion were sufficient to comply with the Board's order of remand. Kentucky Revised Statute (KRS) 342.275 provides that the record should contain "[t]he award, order, or decision, together with a statement of the findings of fact, rulings of law, and any other matters pertinent to the question at issue...."[1] The ALJ is required to "clearly set out" the "basic facts" used "to support the ultimate conclusions." *Shields v. Pittsburgh & Midway Coal Mining Co.,* Ky.App., 634 S.W.2d 440, 444 (1982). The *Shields* court further held that "the statute [KRS 342.275] and the case law require the [old] Board to support its conclusions with facts drawn from the evidence in each case so that both sides may be dealt with fairly and be properly apprised of the basis for the deci-

1. Unless otherwise noted, all statutory references are to the law as it existed prior to the 1994 amendments. The general rule is that a claim for workers' compensation benefits is controlled by the law in effect on the date of the injury. *Wells v. Craddock,* Ky.App., 683 S.W.2d 639, 640 (1985).

sion." *Id.* Finally, the *Shields* court quoted with approval the trial court's statement that "the litigants are entitled to at least a modicum of attention and consideration to their individual case." *Id.*

As we stated previously herein, the ALJ stated that he relied upon Mosely's age, education, occupation, past work experience, and transferrable skills, as well as Mosely's physical condition and limitations. These are the types of factors set forth in the definition of "disability" in KRS 342.0011. The ALJ also stated that he "found most persuasive" the fact that "Mosely has returned to work ... at a wage equal to or greater than that which he was earning" and that he was "performing his job adequately...." The ALJ further noted that Mosely's current restrictions are no more burdensome than those placed on him after his carpal tunnel surgery. Although the additional findings of the ALJ were not greatly detailed, he did set forth basic facts supporting his ultimate conclusions such that each side was "dealt with fairly" and "properly apprised of the basis for the decision." *Shields, supra* at 444.

Mosely contends that the ALJ and the Board failed to make findings consistent with the undisputed evidence and erred as a matter of law in not finding that Mosely suffers a permanent partial occupational disability for which he should be compensated. We turn now to the relevant testimony in the case. Dr. Schecker assessed a fifteen percent impairment to the person as a whole based upon the SLAC wrist syndrome. Dr. Kasdan assessed a twenty-three percent impairment to the body as a whole based upon "lost range of motion" in Mosely's right wrist and "residual findings on nerve conduction studies demonstrating residual carpal tunnel syndrome." Dr. Hargadon, who performed an independent medical examination of Mosely at Ford's request, assessed a twenty-seven percent impairment to the body as a whole. Dr. Hargadon also stated that of the twenty-seven percent rating, fifteen percent "is due to aggravation of his [Mosely's] underlying condition, which, in my opinion, is not work related." In addition, Mosely presented the testimony of William Harpool, a vocational counselor, who testified that the combination of Mosely's injuries and work restrictions would result in a seventy-five to eighty-five percent loss of access to the labor market.

 In order to prevail herein, Mosely's burden is heavy. Since the ALJ found against him and dismissed his claim, Mosely was required to demonstrate to the Board that the evidence was "so overwhelming as to compel a finding in his favor of permanent occupational disability." *Paramount Foods, Inc. v. Burkhardt,* Ky., 695 S.W.2d 418, 419 (1985). Furthermore, for evidence to be compelling, it must be "so overwhelming that no reasonable person could reach the conclusion of the [old] Board [or ALJ]." *REO Mechanical v. Barnes,* Ky.App., 691 S.W.2d 224, 226 (1985). He must persuade this court that "the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly,* Ky., 827 S.W.2d 685, 687–88 (1992).

 Mosely notes that all of the medical evidence shows that he has a functional impairment of between fifteen percent and forty percent. However, in order to receive workers' compensation benefits, a claimant must show that he or she has suffered some degree of occupational disability, rather than functional disability or impairment. *Cook v. Paducah Recapping Service,* Ky., 694 S.W.2d 684, 687 (1985). Functional impairment and occupational disability are not synonymous terms, *Newberg v. Garrett,* Ky., 858 S.W.2d 181, 185 (1993), and it is the responsibility of the finder of fact (ALJ) to "translate the percentage of functional disability into the percentage of occupational disability" as "[t]he extent of occupational disability is not necessarily the same as the extent of functional disability." *Pruitt v. Bugg Bros.,* Ky., 547 S.W.2d 123, 124 (1977).

 There is evidence to support the ALJ's conclusion that the wrist fusion surgery and related problems had not caused Mosely to suffer any additional occupational disability beyond that already assigned to him due to his carpal tunnel syndrome. For example, Dr. Hargadon wrote that he would not add anything further to the carpal tunnel

restrictions Mosely had been working under since 1986. In addition, Mosely testified that his symptoms following the October 1993 injury were "the same" as the carpal tunnel symptoms he already had. Furthermore, Ford introduced a letter from Dr. Hal Corwin in which he states that Mosely's carpal tunnel test results have changed little since 1987. Finally, Mosely testified that he had no problem working approximately fifty hours per week after the wrist fusion surgery.

Mosely did present some evidence that tended to demonstrate that he was suffering from an occupational disability. This included, inter alia, Harpool's testimony that Mosely's access to the labor market was diminished due to his injuries from October 1993 and the fact that Dr. Kasdan assigned Mosely a one percent impairment to the body in 1987 but a twenty-three percent impairment rating in 1995. Having examined the evidence as a whole, however, we cannot conclude that it merits reversal of the ALJ and the Board. *Burkhardt, supra; Kelly, supra.*

Mosely argues that *City of Paintsville v. Ratliff,* Ky., 889 S.W.2d 784 (1994), holds that a functional impairment rating sets a floor below which the permanent partial disability benefits shall not fall. In the course of deciding *Ratliff,* the court noted that the 1994 amendments to KRS 342.730(1)(b) "reiterate that the functional impairment rating is controlling when the employee returns to work at a wage equal to or greater than the employee's pre-injury wage, unless a greater percentage of disability can be established under KRS 342.0011(11)." *Id.* at 788.

Mosely's argument is without merit, however. First, since the law of the date of injury is generally controlling, *Craddock, supra* at 640, and since the 1994 amendments to KRS 342.730(1) have been held not to have retroactive effect, *Spurlin v. Adkins,* Ky., 940 S.W.2d 900, 904 (1997), the 1994 amendments to KRS 342.730(1)(b) have no bearing on this case since Mosely's injuries occurred in October 1993. Furthermore, when read in conjunction with *Cook, supra,* it appears that *Ratliff* and the 1994 version of KRS 342.730 presuppose some level of occupational disability.

Finally, we turn to the case of *Osborne v. Johnson,* Ky., 432 S.W.2d 800 (1968), which Mosely claims is dispositive of the issue in this case. *Osborne* provides that

[w]hile a workman who has sustained a permanent bodily injury of appreciable proportions may suffer no reduction of immediate earning capacity, it is likely that his ultimate earning capacity will be reduced either by a shortening of his work life or a reduction of employment opportunities through a combination of age and physical impairment. Accordingly, it is our opinion that in those instances in which the workman has sustained no loss of immediate earning capacity but has incurred a permanent injury of appreciable proportions, the Workmen's Compensation Board ... can and should make an allowance for some degree of permanent partial disability on the basis of the probability of future impairment of earning capacity as indicated by the nature of the injury, the age of the workman, and other relevant factors.

*Id.* at 804.

Reversal of this case based upon *Osborne* would likely be appropriate if the ALJ had relied solely upon the fact that Mosely returned to work without a reduction in his immediate earning capacity in determining that Mosely had no occupational disability. However, as we noted previously, the ALJ listed other factors which led him to conclude that Mosely suffered from no occupational disability.

The opinion of the Board affirming the decision of the ALJ is affirmed.

All concur.