Larry D. BEALE, Director of
Special Fund, Appellant,

v.

HIGHWIRE, INC., Wayne Messer, Honorable Ronald W. May, Administrative Law Judge, and Workers' Compensation Board of Kentucky, Appellees.

No. 91–CA–588–WC.

Court of Appeals of Kentucky.

Jan. 3, 1992.

Appeal Dismissed by Kentucky Supreme Court April 6, 1992.

Released for Publication Feb. 1, 1993.

Denis S. Kline, Labor Cabinet, Louisville, for appellant.

John V. Porter, Paintsville, Robert A. Rowe, Jr., Prestonsburg, for appellee, Wayne Messer.

W.W. Burchett, Prestonsburg, for appellee, Highwire, Inc.

Valerie L. Salven, Gen. Counsel, Dept. of Workers' Claims, Frankfort, for appellee, Workers' Compensation Bd.

Before HOWERTON, McDONALD and STUMBO, JJ.

HOWERTON, Judge.

The Special Fund appeals from an order of the Workers' Compensation Board affirming an opinion and award by Administrative Law Judge (ALJ) Ronald W. May, who determined that Wayne Messer was suffering from coal workers' pneumoconiosis, Category I. He further determined that Messer had had multiple employments and that his last exposure was in the employment of Highwire, Inc. Upon recalculation of Messer's lung performance figures for FVC and FEV1 according to American Medical Association (AMA) guidelines, the ALJ concluded that all six reporting doctors would have found that Messer's FEV1 performance figures were less than 80 percent and more than 55 percent of predicted ability. On this finding, the ALJ made a tier two award for 75 percent disability and required the employer to pay 25 percent and the Special Fund 75 percent of the total.

The Fund claims that the Workers' Compensation Board erred by affirming the ALJ's opinion and award and that the ALJ erred in two respects. The Fund first argues that it was error for the ALJ to recalculate the values for the FEV1 given by the testifying experts. The Fund's second argument is that the ALJ erred by basing its opinion on FEV1 values only and by disregarding the percentage of normal FVC values. We disagree with both allegations and affirm.

The ALJ heard testimony from Messer and six physicians. The evidence as presented would indicate that all six physicians agreed that the FEV1 percent of normal and the FVC percent of normal for

Messer was above 55 percent. Three of the six physicians indicated that Messer's FEV1 percent of normal was below 80 percent, and two of the physicians testified that his FVC percent of normal was below 80 percent. Based on the calculations as presented, the remaining physicians testified that both percents of normal were above 80 percent. Two of the reporting physicians had both tests calculated below 80 percent.

To determine lung impairment, tests have been established to determine one's forced vital capacity (FVC) measured in liter volume for lungs and one's forced expiratory volume in one second (FEV1). The latter is a test to determine one's capacity to expel a volume of air in one second. KRS 342.732 is Kentucky's latest black lung statute, and in order to receive tier two benefits, KRS 342.732(1)(b) provides that the ALJ must find "... respiratory impairment resulting from exposure to coal dust as evidenced by spirometric test values of fifty-five percent (55%) or more but less than eighty percent (80%) of the predicted normal values...." KRS 342.-732(2) further provides:

> The presence of respiratory impairment resulting from exposure to coal dust shall be established by using the largest forced vital capacity (FVC) value or the largest forced expiratory volume in one second (FEV1) value determined from the totality of all such spirometric testing performed in compliance with accepted medical standards.

After recalculating the results submitted by the six reporting physicians based on the volumes from each test compared with the AMA guideline norms for Messer, the ALJ determined that all six spirometric tests for the FEV1 values fell in the 55 percent to 80 percent range.

The tables for the AMA guidelines present predicted normal FVC values and FEV1 values in liters. The tables are based on one's age and one's height. There are also separate tables for men and for women. The physicians reported the volume obtained for FVC and FEV1, but they had used inappropriate norms for Messer's age and height. The ALJ merely took their findings and recalculated the appropriate percentages.

■ The Special Fund first argues that the ALJ erred in recalculating Messer's spirometric performance. We conclude that his action was proper. The statute specifically requires that the spirometric results be based on the values contained in the latest AMA guidelines. The guidelines provide for a consistent objective standard for evaluating test results. The ALJ did not conduct his own medical evaluation of Messer, nor did he modify the volume measurements obtained by the physicians. He used the predicted normal values, together with Messer's stipulated height of 69 inches, and recalculated the actual percent of deviation from the norms. The calculations by the ALJ did not require any medical expertise. It merely calculated Messer's lung functions according to the predicted norms provided for one of his age and height in the Guidelines. We conclude that the action by the ALJ was correct, proper, and administratively efficient.

■ The Special Fund's second argument involves the interpretation of KRS 342.732(2), *supra*. The Fund argues that Messer was not entitled to tier two benefits pursuant to KRS 342.732(1)(b), but that he was merely entitled to retraining incentive benefits (RIB) under KRS 342.732(1)(a). After recalculating the percentages, the ALJ determined that all of the physicians should have concluded that Messer's highest FEV1 value was less than 80 percent but more than 55 percent of what was predicted under the guidelines. Several of the physicians would have found that Messer's FVC values were above 80 percent. The Fund's contention is that if either the highest FVC value or the highest FEV1 value is greater than 80 percent of that predicted, the claimant's benefits must be calculated to give only RIB. The Board concluded, and we agree, that KRS 342.-732(2) authorizes the ALJ to use either the largest FVC value or the largest FEV1 value in deciding whether there is compensable lung impairment.

KRS 342.732 makes specific reference to the AMA guidelines in several places. The 1988 guidelines make it clear that some impairment exists if either the FVC or the FEV1 is below a prescribed percentage of the predicted value. Although the language of KRS 342.732(2) may not be perfectly clear, the interpretation by the ALJ and the Board fit within the common usage of all of the language found in the statute. To ascertain legislative intent, one may look to outside sources. *Epsilon Trading Co. v. Revenue Cabinet*, Ky.App., 775 S.W.2d 937 (1989). The Board's interpretation is supported by the 1984 edition of the AMA guidelines, and those guidelines were in effect when the statute was enacted. We do not believe the legislature intended to deprive a coal worker of benefits if his work-caused lung deficiency is based on either his capacity or expiratory volume. We conclude that the conjunctive "or" in subsection (2) allows recovery if the largest volume for either FVC or FEV1 is less than 80 percent.

The decision of the Workers' Compensation Board is affirmed.

All concur.