**Lentena WRIGHT, Appellant,**

v.

**HOPWOOD MINING, (Hopwood Mining); Larry D. Beale, Director of Special Fund, Donna H. Terry, Administrative Law Judge, and Workers' Compensation Board, Appellees.**

**No. 92–SC–102–WC.**

Supreme Court of Kentucky.

June 4, 1992.

Mark L. Ford, Harlan, Thomas W. Moak, Stumbo, Bowling & Barber, Martin, for appellant.

Eric D. Hall, Benita J. Riley, Phillip Goin Taylor, Prestonsburg, for appellee Hopwood Min.

Mark C. Webster, Labor Cabinet—Special Fund, Louisville, for appellee Beale, Dir. of Special Fund.

## OPINION OF THE COURT

The sole issue presented by this case is whether an Administrative Law Judge (ALJ) may exercise discretion in choosing among a claimant's spirometric test values to determine the level of workers' compensation benefits to be awarded pursuant to KRS 342.732.

Claimant worked in the mining industry for 25 years, with his last exposure occurring on July 24, 1988. Subsequently, he filed a claim for compensation benefits, asserting that he had contracted coal workers' pneumoconiosis. The ALJ ruled that claimant suffered from category 1 disease and, citing *Osborne v. Johnson*, Ky., 432 S.W.2d 800 (1968), awarded benefits pursuant to KRS 342.732(1)(b).

This award was appealed by the defendants because claimant's highest FVC value and highest FEV1 value were both greater than 80% of the predicted normal values. The defendants, therefore, asserted that, pursuant to KRS 342.732(2), the ALJ was without authority to consider any but the highest spirometric value of all those in evidence, regardless of whether it be FVC value or FEV1 value, in determining the level of benefits to which claimant was entitled. In this case, because the highest FVC and FEV1 values in evidence both exceeded 80% of the predicted normal,

the maximum benefit authorized clearly was a retraining incentive benefit. KRS 342.732(1)(a). The Board agreed that benefits should have been awarded pursuant to KRS 342.732(1)(a) and reversed the decision of the ALJ. The Board's decision was affirmed by the Court of Appeals, and we affirm.

The FEV1 spirometric test values upon which the ALJ awarded benefits were as follows:

| Physician | FEV1 value |
| --- | --- |
| Dr. Penman | 68.0% |
| Dr. Meyers, Jr. | 72.0% |
| Dr. Broudy | 82.0% * |
| Dr. Lane | 84.0% |
| Dr. Anderson | 88.6% |
| Dr. Dahhan | 92.0% |

\* Dr. Broudy testified that spirometric tests showed a mild obstructive defect, but provided no figures. The 82% figure appears both in the plaintiff's and in the defendant-employer's brief to the ALJ, but is corroborated by no medical evidence of record.

In *Newberg v. Wright*, Ky., 824 S.W.2d 843 (1992), this Court recently addressed the interpretation of KRS 342.732(1)(b) and KRS 342.732(2). We held that if either the largest FVC value or the largest FEV1 value is 55% or more but less than 80% of the predicted normal value, a claimant could qualify for benefits pursuant to KRS 342.732(1)(b), so long as he proved the remaining elements of his claim. We also noted that the American Medical Association's *Guides to the Evaluation of Permanent Impairment (Guides)*, upon which it is clear that the legislature relied in drafting KRS 342.732 and KRS 342.316(2)(b), indicated that because the result of either spirometric test is affected by the degree of the subject's effort, the greatest result obtained on each test most accurately represents the actual impairment. There was no argument in *Wright, supra,* that the ALJ had the discretion to choose any but the highest FVC or FEV1 value in making an award of benefits.

From an examination of KRS 342.732 and KRS 342.316(2)(b) it is apparent that the legislature, in enacting these provisions, sought to establish more precise and more objective standards of proof for a coal workers' pneumoconiosis claim than was previously the case. The resulting scheme has, for instance, decreased the subjective element in reading a claimant's X-rays by prescribing consistent standards for acceptable X-rays, and by prescribing the classification system to be used in interpreting them. KRS 342.732, KRS 342.-316(2)(b)2.a. Similarly, the degree of a claimant's occupational disability is established by statute and is based on his degree of respiratory impairment, as well as on the classification of his X-rays and not on a subjective determination of occupational disability as was previously the case. KRS 342.732. Furthermore, evidence of respiratory impairment is objective and based on the claimant's performance on specific spirometric tests, the results of which are to be obtained and reported in accordance with KRS 342.316(2)(b)2.b.

KRS 342.316(2)(b)2. governs the admissibility of medical evidence in proof of a claim. KRS 342.316(2)(b)2.b. directs each physician to report the highest FVC value and the highest FEV1 value obtained from at least three acceptable spirometric maneuvers. KRS 342.732(2) governs the use of spirometric evidence and reads as follows:

(2) The presence of respiratory impairment resulting from exposure to coal dust shall be established by using the largest forced vital capacity (FVC) value or the largest forced expiratory volume in one second (FEV1) value determined from the totality of all such spirometric testing performed in compliance with accepted medical standards.

Considering the plain meaning of this language, the fact that spirometric test values are affected by the subject's effort, and the apparent attempt by the legislature to incorporate more objective standards for the award of benefits, we believe that the legislature clearly intended for none but the highest FVC value and the highest FEV1 value to be considered in determining the level of benefits to be awarded.

We do not believe that such an interpretation will produce absurd results. For claimants whose highest spirometric values

fall above the statutory maximum for a particular level of benefits, KRS 342.125(2) provides for a reopening of the claim if their level of impairment increases.

Claimant asserts that by allowing consideration of none but the highest spirometric value, this statutory interpretation would enable an unethical witness to thwart a worthy claim. If such behavior is suspected, a claimant is always free to move to strike the evidence. Furthermore, if such behavior is discovered after the award, the claimant may move to reopen the award pursuant to KRS 342.125(1). We note that claimant's case was not close to the line, as no fewer than three of the five FEV1 values of record were greater than the 80% maximum, and the second highest value, 88.6%, was placed into evidence by the claimant's expert.

We disagree with claimant's assertion that a ruling such as we have made strips the ALJ of discretion. As addressed earlier, it is apparent that the legislature, in enacting KRS 342.732 and KRS 342.-316(2)(b) sought to limit the discretion of the ALJ in awarding benefits for occupational disability caused by coal workers' pneumoconiosis. That is the legislature's prerogative. The ALJ continues to exercise discretion to determine from the evidence whether and to what radiographic classification the claimant suffers from coal workers' pneumoconiosis; whether the condition is caused by his employment; and whether exposure to coal dust was a medically significant factor in causing any respiratory impairment which the claimant exhibits.

Based on the evidence presented in this case, the highest level of benefit authorized was a retraining incentive benefit. KRS 342.732(1)(a). Accordingly, the decision of the Court of Appeals is affirmed, and the case is remanded to the Administrative Law Judge for the entry of an award in accordance with this opinion.

All concur.