**Cecil I. VARNEY, Appellant,**

v.

**Vicki G. NEWBERG, Acting Director of Special Fund; Eastern Coal Corporation; Donna H. Terry, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 92–SC–1026–WC.

Supreme Court of Kentucky.

May 27, 1993.

Case Ordered Published Sept. 2, 1993.

Ralph Roland Case, Pikeville, for appellant.

David Randall Allen, Denis S. Kline, Peter J. Naake, Labor Cabinet—Special Fund, Louisville, for appellee Newberg.

William Baird, Pikeville, for appellee Eastern Coal.

## OPINION OF THE COURT

Claimant, whose date of birth was February 10, 1929, was last exposed to the hazards of pneumoconiosis on June 16, 1989. On that date he filed a claim for compensation benefits alleging that he was totally, occupationally disabled by coal workers' pneumoconiosis and chronic occupational bronchitis. With his claim he filed medical reports by Dr. John E. Myers and Dr. William H. Anderson.

Dr. Myers had examined claimant on February 8, 1989, two days before his sixtieth birthday. He reported that claimant was 71 inches tall, that he had category 1 disease, that his FVC value was 77% of the predicted normal, and that his FEV1 value was 82% of the predicted normal.

Dr. Anderson had examined claimant a few weeks later, on March 13, 1989. He reported that claimant was 72 inches tall, that he had category 1 disease, that his FVC value was 96% of the predicted normal, and that his FEV1 value was 88% of the predicted normal. On deposition, however, it was discovered that Dr. Anderson had used an earlier edition of the AMA guidelines. At claimant's request, he recalculated his FEV1 figure as being less than 80% of the predicted normal value, using the latest edition of the AMA guidelines. Claimant did not request a recalculation of the FVC value. Although claimant submitted Dr. Anderson's report with his claim, he chose not to enter the report into evidence. That was done by the Special Fund.

On February 16, 1990, claimant was examined by Dr. Ballard Wright, who testified on his behalf. Dr. Wright reported that claimant was 72 inches tall, that he had category 1 disease, that his FVC value was 89% of the predicted normal, and that his FEV1 value was 75% of the predicted normal.

Claimant and his employer reached a settlement agreement that was approved by the Administrative Law Judge (ALJ). The Spe-

cial Fund was not a party to the agreement, however, and that portion of the claim proceeded to hearing. The prehearing memorandum indicates that, although the Special Fund stipulated that claimant had contracted pneumoconiosis, it contested the extent and duration of disability and whether there was single or multiple exposure.

The ALJ ruled that this was a multiple exposure claim, with the latest exposure occurring at Eastern Coal Corporation. Based on the testimony of Doctors Wright and Myers, the ALJ ruled that claimant was 75% occupationally disabled, pursuant to KRS 342.732(1)(b), and that the Special Fund was liable for 75% of the award.

On appeal, however, the Workers' Compensation Board (Board) reversed the award because the highest FVC value and the highest FEV1 value in evidence both exceeded 80% of the predicted normal values. The Board ruled that, as a matter of law, claimant was limited to a retraining incentive benefit. KRS 342.732(1)(a). The Court of Appeals affirmed, and we affirm.

KRS 342.732 does not authorize an ALJ to pick and choose among the reported spirometric values. KRS 342.732(2) provides:

> (2) The presence of respiratory impairment resulting from exposure to coal dust shall be established by using the largest forced vital capacity (FVC) value or the largest forced expiratory volume in one second (FEV1) value determined from the totality of all such spirometric testing performed in compliance with accepted medical standards.

In *Newberg v. Wright,* Ky., 824 S.W.2d 843 (1992), we interpreted KRS 342.732(2) and stated:

> if either the largest FVC value or the largest FEV1 value is 55% or more but less than 80% of the predicted normal, a claimant may qualify for benefits under KRS 342.732(1)(b).

*Id.* at 845.

We further explained our interpretation of KRS 342.732(2) in *Wright v. Hopgood Mining,* Ky., 832 S.W.2d 884 (1992), as follows:

> Considering the plain meaning of this language, the fact that spirometric test values

are affected by the subject's effort, and the apparent attempt by the legislature to incorporate more objective standards for the award of benefits, we believe that the legislature clearly intended for none but the highest FVC value and the highest FEV1 value to be considered in determining the level of benefits to be awarded.

*Id.* at 885.

■ Appellant asserts that Dr. Myers' spirometric studies were performed when claimant was fifty-nine years old and that he was sixty years old when he last worked. He ignores the fact that Dr. Meyers' tests were performed at his request and only two days before his sixtieth birthday; that it was he, not the Special Fund, who placed the test results into evidence; and that he has provided no medical evidence that the tests or the reported results were invalid when made.

He also asserts that Dr. Myers reported his height as being 71 inches; whereas, Doctors Wright and Anderson reported a height of 72 inches, a figure that favors his claim. He argues that Dr. Meyers' spirometric values should be recalculated using a height of 72 inches. However, he ignores the fact that he placed Dr. Meyers' report in evidence and that he had the opportunity, on deposition, to question Dr. Myers regarding the accuracy of the measurement, yet he failed to do so. Dr. Myers' testimony indicated a measurement of 70½ inches that was rounded to 71 inches for the report.

We have observed that discrepancies in the various physicians' height measurements appear to occur relatively frequently in pneumoconiosis claims. We would remind litigants that the AMA guidelines indicate that a worker's height should be measured, not in inches but in centimeters, with the worker standing in his stocking feet.

Contrary to claimant's argument, the factual situation in this case is not analogous to that in *Newberg v. Wright, supra.* In that case one physician failed to list the worker's height in his report. Furthermore, the percent of normal values he reported were patently erroneous in view of the actual spirometric test results. The values were, therefore, recalculated by the ALJ, using the

height of record that was least favorable to the claimant and that was less favorable than the height which appeared on the physician's spirometric tracing sheet. In the instant case there is no such justification for recalculating the percent of normal represented by Dr. Meyers' spirometric test values.

■ When KRS 342.732(2) is applied to the facts of this case, it is clear this appeal must fail. Dr. Wright reported an FVC value that was 89% of the predicted normal. Therefore, it is not necessary to consider Dr. Anderson's 96% of normal value that was based on an earlier edition of the AMA guidelines. Dr. Myers reported a FEV1 value of 82%. Under these circumstances, a retraining incentive benefit is the maximum benefit to which claimant is entitled by law. KRS 342.732(1)(a).

The decision of the Court of Appeals is hereby affirmed.

All concur except COMBS, J., who dissents without opinion.