Darrell **ASHER**, Appellant,

v.

**BLUE DIAMOND COAL COMPANY; Vicki G. Newberg, Acting Director of Special Fund; Thomas A. Dockter, Administrative Law Judge; and Workers' Compensation Board,** Appellees.

No. 93–CA–976–WC.

Court of Appeals of Kentucky.

June 10, 1994.

**28**

Phillip Lewis, Hyden, for appellant.

Randall S. May, Hazard, for Blue Diamond Coal Co.

David R. Allen, Louisville, for Special Fund.

Before COMBS, GUDGEL and HOWERTON, JJ.

GUDGEL, Judge:

This matter is before us on a petition for review from an opinion of the Workers' Compensation Board (board) reversing and remanding an opinion and award of the Administrative Law Judge (ALJ). The ALJ awarded "tier two" pneumoconiosis benefits to appellant Darrell Asher based upon a finding that he suffers from a 75% permanent partial occupational disability. KRS 342.732(1)(b).

On appeal, appellant contends that the board erred by concluding that it was an abuse of discretion for the ALJ to disregard the medical testimony of Dr. Matthew Vuskovich which has the effect of disqualifying appellant from receiving an award of "tier two" benefits. We disagree. Hence, we affirm.

Appellant is a fifty-six-year-old ex-coal miner who worked underground for thirty-four years. He last worked on June 11, 1991, at which time he was laid off. He filed a claim for disability benefits against appellee Blue Diamond Coal Company on November 13, 1991. At a prehearing conference the appellant's height was measured and stipulated to be sixty-nine inches. Other contested issues were reserved for a hearing.

Reports from four physicians were considered by the ALJ. Three doctors diagnosed appellant to be suffering from pneumoconiosis and fixed the FVC and FEV1 values relating to lung capacity at between 55% and 80%. Dr. John E. Myers, Jr. interpreted appellant's x-rays as showing category 1/2 pneumoconiosis and found an FVC value of 69% and an FEV1 value of 46% based upon a height of seventy inches. Dr. William H. Anderson interpreted appellant's x-rays as showing category 1/0 pneumoconiosis and found an FVC of 69% and an FEV1 of 69% based upon a height of sixty-nine and one-half inches. Dr. Ballard D. Wright interpreted appellant's x-rays as showing category 1/1 pneumoconiosis and found an FVC of 78.7% and FEV1 of 78.1% based upon a height of sixty-nine inches. On the other hand, Dr. Matthew Vuskovich found no evidence of pneumoconiosis and reported an FVC value of 86% and an FEV1 value of 88% based upon a height of sixty-eight inches.

The ALJ awarded "tier two" benefits for category one pneumoconiosis pursuant to KRS 342.732(1)(b), stating in his opinion and award that he was most persuaded by the testimony of the three physicians who found evidence of pneumoconiosis. His only comment concerning Dr. Vuskovich was that "Dr. Vuskovich's calculations are found to be incorrect based upon his measurements of Plaintiff's height." The Special Fund appealed to the board, contending that the ALJ

should have either accepted Vuskovich's values or recalculated the percentage of lung dysfunction reported by Vuskovich based upon the "correct" height of sixty-nine inches and that neither his reported values nor those determined by recalculations utilizing the stipulated height would yield results entitling appellant to an award of anything other than retraining incentive benefits (RIB). KRS 342.732(1)(a). The board agreed with the Special Fund, finding the ALJ had implicitly reserved for himself the task of calculating the correct values for appellant's pulmonary studies by not requiring the parties to do so, and that accordingly it was an abuse of discretion to "simply boot" the test results reported by Vuskovich, especially since a recalculation of those results based upon a sixty-nine inch height for appellant yielded values of both FVC and FEV1 above 80% of expected normals. The ALJ's decision was reversed with directions to award appellant only RIB. This appeal followed.

On appeal, appellant contends that the board acted improperly by both reversing a factual finding of the ALJ which was supported by substantial evidence, and by substituting its judgment for that of the ALJ in recalculating Vuskovich's pulmonary function values. (Appellant does not, however, dispute the recalculated results.) Appellant argues that the ALJ properly disregarded Vuskovich's testimony as to those values because they were based upon an incorrect height measurement. We disagree.

 In order to be eligible for "tier two" benefits under KRS 342.732(1)(b), the ALJ must find respiratory impairment resulting from exposure to coal dust as evidenced by spirometric test values of fifty-five percent or more but less than eighty percent of the predicted normal values. KRS 342.-732(2) goes on to state:

> The presence of respiratory impairment resulting from exposure to coal dust shall be established by using the largest forced vital capacity (FVC) value or the largest forced expiratory volume in one second (FEV1) value determined from the totality of all such spirometric testing performed in compliance with accepted medical standards.

In *Varney v. Newberg,* Ky., 860 S.W.2d 752 (1993), the court held that "KRS 342.732 does not authorize an ALJ to pick and choose among the reported spirometric values." *Id.* at 754. Moreover, in *Wright v. Hopwood Mining,* Ky., 832 S.W.2d 884 (1992), the court addressed the precise issue of whether an ALJ may exercise discretion in choosing among a claimant's spirometric test values to determine the level of benefits to be awarded. The court held that the ALJ did not have the discretion to consider any but the highest reported FVC or FEV1 values in making an award of benefits. *See also Watkins v. Ampak Mining, Inc.,* Ky.App., 834 S.W.2d 699 (1992). However, a claimant is not required to establish that both his highest FVC and FEV1 values are less than 80% of predicted normals. If either the largest FVC value or the largest FEV1 value is 55% or more but less than 80% of the predicted normal value, a claimant may qualify for benefits under KRS 342.732(1)(b). *Newberg v. Wright,* Ky., 824 S.W.2d 843 (1992). Here, the values reported by three of the physicians would have entitled appellant to an award of benefits under KRS 342.732(1)(b), but the values reported by Dr. Vuskovich, both of which are higher than 80% of expected normals, clearly restrict appellant to an award of RIB under KRS 342.732(1)(a). While an ALJ must rely on the largest FEV1 or FVC value produced by spirometric testing, in *Beale v. Highwire Inc.,* Ky.App., 843 S.W.2d 898 (1992), this court held that where the reporting physicians used inappropriate norms for age and height the ALJ properly recalculated the percent of normal values using each physician's reported spirometric values and corrected norms for age and height. The parties in *Beale,* as in this case, had stipulated the claimant's correct height. The court pointed out that because the ALJ did not modify volume measurements obtained by the physicians but simply used the claimant's stipulated height to recalculate the actual percent of deviation from the correct predicted normal values, his action was "correct, proper, and administratively efficient." *Id.* at 900. Furthermore, in *Newberg v. Price,* Ky., 868 S.W.2d 92 (1993), the court authorized an ALJ to substitute a particular

physician's height measurement with a measurement stipulated to by the parties in order to recalculate the reported spirometric values. In *Price,* several physicians reported varying spirometric test values based upon a range of three inches in the claimant's height. The ALJ arbitrarily chose the reported height most favorable to the claimant and recalculated each physician's FVC and FEV1 values, leading to an award of benefits for total occupational disability. The court held that this was error, specifically noting there was no stipulation as to height, and no evidence that the height measurement chosen by the ALJ was any more accurate than any of the others. Nevertheless, the court recognized that the ALJ had authority to substitute one physician's height measurement for that of another based upon a stipulation of the parties. *Id.* at 94.

Here, there was a stipulation as to height. Further, the issue as to "correct values for pulmonary studies" was identified at the prehearing conference as a contested issue reserved for the hearing. The issue before us then is whether or not the ALJ should be required to recalculate the percent of normal values in dispute using a stipulated height. As we noted earlier, KRS 342.732(2) directs the ALJ to consider only the highest FEV1 and FVC values determined from the *totality* of all spirometric testing when making a determination as to the level of benefits to be awarded. We recognize that accurate figures are critical to a worker's claim. Moreover, the ALJ is clearly authorized by *Wright, supra,* and *Beale, supra,* to recalculate the percent of normal values in dispute by using a stipulated height measurement to obtain correct values. Thus, in light of the foregoing decisions we conclude that the failure of the ALJ in this case to determine the highest correct values and then use them to determine the level of benefits for which appellant qualifies under KRS 342.732 was clearly erroneous. In short, we agree with the board the ALJ should have recalculated the spirometric test results in conformity with the parties' stipulation as to height and then made an appropriate award of RIB benefits based upon Dr. Vuskovich's test results. The ALJ was not entitled to simply disregard Dr. Vuskovich's test results merely because Vuskovich's height measurement was inconsistent with the stipulated height measurement.

For the foregoing reasons, the board's decision is affirmed.

All concur.