**Ed Neil FIELDS, Appellant/Cross–Appellee,**

v.

**CARBON RIVER COAL COMPANY; Denis S. Kline, Administrative Law Judge; and Workers' Compensation Board, Appellees/Cross–Appellees,**

and

**William O. Windchy, Acting Director of Special Fund, Appellee/Cross–Appellant.**

Nos. 95–CA–000036–WC, 95–CA–000196–WC.

Court of Appeals of Kentucky.

Feb. 23, 1996.

As Modified March 8, 1996.

Case Ordered Published by Court of Appeals April 12, 1996.

W. Barry Lewis, Holliday & Lewis, Hazard, for Appellant/Cross–Appellee.

Joel D. Zakem, Labor Cabinet, Louisville, for Appellee/Cross–Appellant Special Fund.

Before EMBERTON, GUDGEL and HUDDLESTON, JJ.

HUDDLESTON, Judge.

This review of a decision of the Workers' Compensation Board presents an issue of first impression under Ky.Rev.Stat. (KRS) 342.316(2)(b)2.b. and KRS 342.732, that is whether an Administrative Law Judge (ALJ) has the discretion to choose pre-bronchodilator or post-bronchodilator test results in a workers' pneumoconiosis claim. We hold that the ALJ does not have such discretion and, therefore, reverse.

Ed Neil Fields has been employed in the mining industry since 1957. In April 1992, he began working for Carbon River Coal Company. Shortly thereafter, Fields filed for workers' compensation benefits alleging he was totally occupationally disabled due to coal workers' pneumoconiosis, although he continued to be employed by Carbon River Coal. The ALJ found Fields 75% permanently partially disabled as a result of coal workers' pneumoconiosis. Fields was awarded permanent partial disability benefits and retraining incentive benefits (RIB). In making this award, the ALJ used forced vital capacity (FVC) values to determine the extent of Fields' respiratory impairment. Values above 55% but below 80% of predicted norms establish one of the two necessary prongs contained in Ky.Rev.Stat. (KRS) 342.732(1)(b) that entitle a claimant to an irrebuttable presumption of a 75% occupational disability. In using the FVC values, the ALJ ignored a test, administered by Dr. Abdul Dahhan, that obtained a value of 86% of the predicted norm, a percentage which exceeds the limit contained in KRS 342.732(1)(b).

On appeal to the Board, the Special Fund argued that the ALJ abused his discretion in disregarding the FVC test result obtained by Dr. Dahhan. Fields argued that the ALJ did not abuse his discretion in ignoring Dr. Dahhan's result because the FVC value was determined after the administration of a bronchodilator which presented an artificially inflated rating. The Board agreed with Fields' contention that it was within the ALJ's discretion to ignore this test result, stating that, in its judgment, Dr. Dahhan utilized the bronchodilator in violation of procedures set forth in the latest edition of the American Medical Association's guide to evaluating permanent impairment. This guide has been adopted by the General Assembly as the appropriate guide for administration of spirometric tests. KRS 342.316(2)(b)2.b.

However, the Board reversed the ALJ's award of permanent partial disability payments because Fields continued to work for Carbon River Coal Company. The Board reasoned that under KRS 342.732(1)(b)–(d) the payment of benefits to working miners was disallowed. Thus, it found that Fields could not presently make a demand under the statute.

Fields appealed that part of the Board's decision that determined he was not entitled to receive occupational disability benefits while still working in the mining industry. The Special Fund cross-appealed arguing that the Board erred when it held that the ALJ did not abuse his discretion in ignoring the FVC value obtained by Dr. Dahhan.

In the meantime, the case of *Smith v. Leeco, Inc.*, Ky., 897 S.W.2d 581 (1995), was pending before the Kentucky Supreme Court. *Smith* involved the same issue in Fields' appeal, that is: do the irrebuttable presumptions contained in 342.732(1)(b)–(d) entitle a coal worker to file a claim for occupational disability and receive benefits under

the statute while he continues to work?[1] The instant appeal was held in abeyance pending a decision in *Smith.* The Supreme Court has answered the question posed above and the views expressed in that opinion may have implications in this case. However, the cross-appeal of the Special Fund will be addressed first because, if Dr. Dahhan's FVC test results should have been considered by the ALJ, then Fields would only be entitled to RIB benefits under KRS 342.732(1)(a).

◼ KRS 342.732(1)(b) provides that a worker who is determined to have a radiographic classification of 1/0, 1/1 or 1/2 and has a respiratory impairment as a result of exposure to coal dust, measured by spirometric tests, equal to or greater than 55% but less than 80% of predicted normal values is entitled to an irrebuttable presumption of 75% occupational disability. The spirometric tests that determine respiratory impairment, by statute, must be administered in accordance with "the latest edition available of the guides to the evaluation of permanent impairment published by the American Medical Association." KRS 342.732(1)(b).

The presence of a respiratory impairment is established through the largest FVC or forced expiratory volume in one second (FEV1) obtained in the spirometric testing and "performed in compliance with accepted medical standards." KRS 342.732(2). KRS 342.316(2)(b)2.b. governs the admissibility of spirometric tests in workers' compensation proceedings:

> 2. To be admissible, medical evidence offered in any proceeding under this chapter for determining a claim for occupational pneumoconiosis resulting from exposure to coal dust, shall comply with accepted medical standards as follows:
>
> \*   \*   \*   \*   \*   \*
>
> b. Spirometric testing shall be conducted in accordance with the standards recommended in the latest edition available of the guides to the evaluation of permanent impairment published by the American Medical Association and the 1978 ATS epidemiology standardization project. The FVC or the FEV1 values shall represent the largest of such values obtained from three (3) acceptable forced expiratory volumes maneuvers.... Reports of spirometric testing shall include a description by the physician of the procedures utilized in conducting such spirometric testing and a copy of the spirometric chart and tracings from which spirometric values submitted as evidence were taken.

The latest guidelines published by the American Medical Association (AMA) for spirometric testing in effect at the time Dr. Dahhan tested Fields' respiratory impairment were contained in the third edition. That edition states that if, at the time of the spirometric testing, the physician observes evidence of wheezing or other evidence of bronchospasm, then the ventilatory studies should be done before and after the use of a bronchodilator. In addition, the guidelines state:

> The spirogram indicating the best effort, *either before or after administration of the bronchodilator,* should be used to calculate the FVC and FEV1. (Emphasis supplied.)

AMA and 1978 ATS Epidemiology Standardization Project, GUIDES TO THE EVALUATION OF PERMANENT IMPAIRMENT § 5.2 (3d ed. 1984).[2] The Board reasoned that Dr. Dahhan's statement in his medical report that "[e]xamina-

---

1. The claimant in *Smith v. Leeco, Inc.*, Ky., 897 S.W.2d 581 (1995), was found 100% occupationally disabled, whereas the ALJ determined that Fields was 75% occupationally disabled. As Fields recognizes in his brief, there is no real distinction between *Smith* and the case before us based upon this factual dissimilarity. The two sections of the statute, KRS 342.732(1)(b) and (1)(d), both contain an irrebuttable presumption of occupational disability.

2. In June 1993, the AMA published the GUIDES TO THE EVALUATION OF PERMANENT IMPAIRMENT § 5.2 (4th ed. 1993). The Fourth Edition provides that a bronchodilator should be used if: (1) wheezing is heard in the chest examination, (2) if the spirometric tests administered without medication indicate that an obstruction is present, or (3) if the FEV1/FVC ratio is below 0.70. The best effort, either before or after the administration of the bronchodilator, should be used to determine the presence of permanent impairment and the appropriate FEV1 and FVC values.

tion of the chest showed good air entry into both lungs. No crepitation or wheezing are detected," established that the FVC value was obtained in violation of the AMA guidelines and was, therefore, invalid and properly excluded by the ALJ.

We review workers' compensation claims in accordance with the standard set forth in *Western Baptist Hosp. v. Kelly*, Ky., 827 S.W.2d 685, 687 (1992). We are allowed to

correct the Board only where the ... Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice. *Id.*

The hindsight determination by the Board of the ALJ's motive in excluding Dr. Dahhan's FVC test values after the administration of a bronchodilator to Fields was clearly an error, not only in statutory interpretation, but also an error of such a nature as to cause "gross injustice."

KRS 342.316(2)(b)2.b. and 342.732(1)(b) require that the AMA guidelines be followed in the administration of spirometric testing. The Supreme Court and this Court have repeatedly held that the statutory directive is not discretionary; once the ALJ has determined the type of spirometric testing (FVC or FEV1) appropriate for the workers' claim, he or she must take the highest valid percentage from the test results. *Varney v. Newberg*, Ky., 860 S.W.2d 752, 754 (1993); *Wright v. Hopwood Mining*, Ky., 832 S.W.2d 884, 885 (1992); *Asher v. Blue Diamond Coal Company*, Ky.App., 878 S.W.2d 27, 29 (1994); *Watkins v. Ampak Mining, Inc.*, Ky.App., 834 S.W.2d 699, 701 (1992).

Dr. Ballard Wright, who the ALJ identified as presenting the more "persuasive" evidence, also performed spirometric testing of Fields. However, Dr. Wright did not administer a bronchodilator and obtain FVC and FEV1 test results for Fields, although he

noted in his report that "[a]uscultation of the lung fields revealed mild exporatory wheezes." According to the AMA guidelines in effect at the time, Dr. Wright, upon observing wheezing or other evidence of bronchospasm, should have then tested Fields after the administration of a bronchodilator. Dr. Wright did not do so; thus, his test results are just as invalid as Dr. Dahhan's.

In the case before us, the Board essentially authorized the ALJ to pick and choose between the test results reported. Finding one physician's test results invalid because the administration of the test was not in accordance with AMA guidelines and, therefore, did not meet the standards set forth in KRS 342.316(2)(b)2.b. and KRS 342.732(2), and finding another physician's tests valid, even though his results were not reached in accordance with statutory mandates either, is arbitrary. The dangers of manipulating evidence and reaching inconsistent results in workers' occupational disease claims are the very things KRS 342.316(2)(b)2.b. and 342.732(2) were designed to eliminate. *See Wright v. Hopwood Mining*, Ky., 832 S.W.2d 884, 885 (1992).[3] The Board's election to consider the validity of only one of the doctor's test results amounted to a misinterpretation of the statute because, by statute, *all* spirometric testing must be performed in accordance with the AMA guidelines to be valid. KRS 342.316(2)(b)2.b. and 342.732(2).

We disagree with Fields' contention that use of post-bronchodilator test results is inappropriate for the determination of respiratory impairment. KRS 342.316(2)(b)2.b. requires that spirometric testing be conducted in accordance with current AMA guidelines for the evaluation of permanent impairment. We are required to give the words of a statute their literal meaning unless to do so would lead to an absurd result or unreasonable conclusion. *Bailey v. Reeves*, Ky., 662 S.W.2d 832, 834 (1984). By the statute's own language, the AMA standards contained

---

3. The Court stated: "Considering the plain meaning of this language [KRS 342.732(2)], the fact that spirometric test values are affected by the subject's effort, *and the apparent attempt by the legislature to incorporate more objective standards for the award of benefits*, we believe that the legislature clearly intended for none but the highest FVC value and the highest FEV1 value to be considered in determining the level of benefits to be awarded." *Wright*, 832 S.W.2d at 885 (Emphasis supplied.)

in the guidelines can be considered to be incorporated into its text. That the AMA guidelines contain provisions for the administration of a bronchodilator in certain circumstances, and that these standards are incorporated by the statute, does not lead to an absurd or unreasonable conclusion. The language of the statute is clear: the AMA guidelines are to be utilized in determining respiratory impairment. This includes the use of bronchodilators.

The AMA guidelines (whether the third or fourth edition is followed) call for the administration of a bronchodilator and subsequent testing in certain objective situations. If a bronchodilator should be administered, then the guidelines direct the physician to calculate the FVC and FEV1 values from these results. Thus, pre-bronchodilator and post-bronchodilator results are both contemplated as valid predictors of respiratory impairment. KRS 342.316(2)(b)2.b. and 342.732(2) make no distinction between the two tests and, where there is no exception to the positive terms of a statute, we will not create one. *Bailey v. Reeves,* Ky., 662 S.W.2d 832, 834 (1984).

Thus, both pre-bronchodilator and post-bronchodilator spirometric testing used to calculate FVC and FEV1 values are equally instructive in determining a workers' respiratory impairment under Kentucky's statutory scheme. Of course, this presupposes that the tests are valid. In Fields' case, neither the tests conducted by Dr. Dahhan nor those conducted by Dr. Wright yielded valid results upon which the ALJ could have premised an award. Neither administered the spirometric tests in accordance with AMA guidelines as required by statute. As a result, the decisions of the Board and the ALJ are reversed. Either new, valid, FVC and FEV1 values must be obtained or Fields' occupational disability claim must be dismissed for a lack of proof of a necessary element under KRS 342.732(1)(b), that of respiratory impairment.

In the event that valid FVC and FEV1 results are obtained upon remand and a showing of occupational disability is made under the applicable sections of KRS 342.732, a few comments on the application of *Smith*

*v. Leeco, Inc.,* are necessary. *Smith* makes clear that a miner such as Fields is only entitled to receive RIB benefits while still employed. 897 S.W.2d at 582. However, the Supreme Court also held that a claim for occupational disability due to pneumoconiosis under KRS 342.732(1)(b)–(d) should be held in abeyance as long as the worker is employed by the same employer against whom the claim is filed rather than dismissed outright. Therefore, if it is determined on remand that Fields is occupationally disabled, and he continues to work for the same employer against whom he made the claim (Carbon River Coal), he is entitled to receive RIB benefits and his claim for occupational disability should be placed in abeyance in accordance with the directive in *Smith, supra.*

The decision of the Board is reversed and the case remanded for proceedings consistent with this opinion.

All concur.